1   ALLEN MATKINS LECK GAMBLE
      MALLORY & NATSIS LLP
2   BALDWIN J. LEE (BAR NO. 187413)
    ALEXANDER NESTOR (BAR NO. 202795)
3   Three Embarcadero Center, 12th Floor
    San Francisco, CA  94111-4074
4   Phone:  (415) 837-1515
    Fax:  (415) 837-1516
5   E-Mail:  blee@allenmatkins.com
              anestor@allenmatkins.com
6
    Attorneys for Defendants
7   SNAP INC., EVAN SPIEGEL,
    BRIAN THIESEN, and IMRAN KHAN
8

9               UNITED STATES DISTRICT COURT

10              CENTRAL DISTRICT OF CALIFORNIA

11                Western Division - Los Angeles

12  | Anthony Pompliano, an individual, | Case No. 2:17-cv-3664 |

13          Plaintiff,              **DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO COMPEL ARBITRATION AND TO DISMISS OR, IN THE ALTERNATIVE, STAY ACTION**

14          vs.

15  Snap Inc., d.b.a. Snapchat, a Delaware
    corporation; Evan Spiegel, Brian
16  Theisen, Imran Khan, and Does 1
    through 10, individuals,
17
            Defendants.             Date:        July 14, 2017
18                                  Time:        9:30 a.m.
                                    Courtroom:   8C
19                                  Judge:       Hon. Dolly M. Gee

20

21

22

23

24

25

26

27

28

LAW OFFICES
Allen Matkins Leck Gamble
Mallory & Natsis LLP

1042624/SF

# <u>TABLE OF CONTENTS</u>

<u>Page</u>

I.    Introduction ...................................................................................................5

II.   Factual And Procedural Background ............................................................7

    A.   Statement of facts...............................................................................7

          1.   Pompliano's employment and agreement to arbitrate with Snap ...............................................................................7

          2.   Pompliano's termination for poor performance ........................8

    B.   Procedural history ..............................................................................9

          1.   July 27, 2016: Pompliano invokes the parties' Agreement, filing a demand for arbitration against Snap ..........................................................................................9

          2.   January 4, 2017: Pompliano files a civil complaint in Los Angeles Superior Court alleging a single claim for purported violation of Labor Code Section 1050 ..........................................................................9

          3.   May 16, 2017: Pompliano files this action, re-alleging the same claims he is litigating in pending arbitration and state court, and adding purported whistleblower claims .............................................................10

III.  Analysis .....................................................................................................11

    A.   The parties' Agreement requires Pompliano to arbitrate his alleged claims..................................................................................11

    B.   The parties' Agreement clearly and unmistakably delegates the question of arbitrability to the arbitrator ......................14

    C.   The Court should send the matter to the arbitrator because Pompliano cannot meet the stringent "wholly groundless" standard ..........................................................................................16

    D.   The Court should dismiss Pompliano's Complaint because all of his claims are subject to arbitration under the parties' Agreement or, alternatively, it should stay the action pending completion of the arbitration proceeding ............................17

IV.  Conclusion .................................................................................................17

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Alliance Bank of Ariz. v. Patel*,
  No. CV 13-736 CAS (JCx),
  2013 U.S. Dist. LEXIS 79202 (C.D. Cal. June 3, 2013) .............................. 13

*AT&T Mobility LLC v. Concepcion*,
  563 U.S. 333 (2011) ..................................................................................... 12

*Dream Theatre, Inc. v. Dream Theater*,
  124 Cal. App. 4th 547 (2004) ................................................................. 16, 17

*Elmore v. CVS Pharm., Inc.*,
  No. 2:16-cv-05603-ODW (ASx),
  2016 U.S. Dist. LEXIS 156481 (C.D. Cal. Nov. 9, 2016) ........................... 14

*Galvan v. Michael Kors USA Holdings, Inc.*,
  No. CV 16-07379-BRO (AFMx), 2017
  U.S. Dist. LEXIS 9059 (C.D. Cal. Jan. 19, 2017) ....................................... 12

*Howsam v. Dean Witter Reynolds*,
  537 U.S. 79 (2002) ....................................................................................... 14

*Jacovides v. Future Foam, Inc.*,
  No. 2:16-cv-01842-CAS (AJWx),
  2016 U.S. Dist. LEXIS 57530 (C.D. Cal. Apr. 25, 2016) ........................... 14

*Khazin v. TD Ameritrade Holding Corp.*,
  773 F.3d 488 (3d Cir. 2014) ........................................................................ 14

*Lewis v. UBS Fin. Services*,
  818 F. Supp. 2d 1161 (N.D. Cal. Sept. 30, 2011) ....................................... 17

*Mohamed v. Uber Technologies, Inc.*,
  848 F.3d 1201 (9th Cir. 2016) ................................................................ 14, 15

*Momot v. Mastro*,
  652 F.3d 982 (9th Cir. 2011) ....................................................................... 15

*Murray v. UBS Sec., LLC*,
  2014 U.S. Dist. LEXIS 9696 (S.D.N.Y. Jan. 27, 2014) ............................. 14

*Qualcomm, Inc. v. Nokia Corp.*,
  466 F.3d 1366 (Fed. Cir. 2006) .............................................................. 16, 17

*Quevedo v. Macy's, Inc.*,
  798 F. Supp. 2d 1122 (C.D. Cal. 2011) ....................................................... 12

*Rent-A-Ctr., W., Inc. v. Jackson*,
  561 U.S. 63 (2010) ....................................................................................... 15

LAW OFFICES
**Allen Matkins Leck Gamble**
**Mallory & Natsis LLP**

1042624/SF

-3-

DEFTS' MPA IN SUPPORT OF MOTION TO COMPEL ARBITRATION AND TO
DISMISS OR, IN THE ALTERNATIVE, STAY ACTION

**Page(s)**

*Ruhe v. Masimo Corp.*,
    No. SACV 11-00734-CJC (JCGx),
    2011 U.S. Dist. LEXIS 104811 (C.D. Cal. 2011) ........................................ 14

*Simmons v. Hankey*,
    No. 2:16-cv-06125-ODW (JEMx),
    2017 U.S. Dist. LEXIS 13388 (C.D. Cal. Jan. 30, 2017) ........................... 14

*Sparling v. Hoffman Constr.*,
    864 F.2d 635 (9th Cir. 1988) ..................................................................... 17

*Thinket Ink Info. Res., Inc. v. Sun Microsystems, Inc.*,
    368 F.3d 1053 (9th Cir. 2004) ................................................................... 17

*Tiri v. Lucky Chances, Inc.*,
    226 Cal. App. 4th 231 (2014) ..................................................................... 15

*Totten v. Kellogg Brown & Root, LLC*,
    No. 5:15-cv-01876-ODW-kkx,
    2016 U.S. Dist. LEXIS 18558 (C.D. Cal. Feb. 10, 2016) ........................... 14

*Wiggins v. ING U.S., Inc.*,
    No. 3:14-CV-1089 (JCH),
    2015 U.S. Dist. LEXIS 78129 (D. Conn. June 17, 2015) ........................... 14

**Statutes**

9 U.S.C. § 3 ...................................................................................................... 17

LAW OFFICES
**Allen Matkins Leck Gamble
Mallory & Natsis LLP**

1042624/SF

-4-

DEFTS' MPA IN SUPPORT OF MOTION TO COMPEL ARBITRATION AND TO
DISMISS OR, IN THE ALTERNATIVE, STAY ACTION

## I.    Introduction

Anthony Pompliano worked at Snap Inc. (formerly Snapchat, Inc.) for three weeks in 2015. As part of his employment negotiation, Snap bargained for and Pompliano signed an arbitration agreement. The agreement requires that all controversies related to his employment be submitted to binding arbitration.

Just such a controversy soon arose: Snap fired Pompliano for poor performance, and Pompliano alleged that his firing was improper. In July 2016, Pompliano filed claims to that effect in arbitration—the correct venue to resolve the dispute given the arbitration agreement. The parties proceeded to arbitrate his claims for many months without issue.

In January 2017, however, Pompliano changed tactics. Flaunting the arbitration agreement, he began running from one court to the next filing lawsuits that parrot the claims he was already arbitrating. First, Pompliano filed a lawsuit in state court that recycled, often verbatim, the allegations in his arbitration demand. Snap moved to compel arbitration. Rather than wait for a ruling, Pompliano then dismissed that suit and sued in this Court, again recycling the same allegations in near-identical form. Throughout all of this churn, the arbitration proceeding has continued. That proceeding has been pending for nearly a year, is set for hearing, and can provide Pompliano with all the relief he seeks.

The takeaway: This dispute should not be in court. Pompliano instead must arbitrate, as he agreed to do. After all, the written agreement he signed unmistakably says that the arbitrator—and the arbitrator alone—is to resolve his contentions. It provides that "***any and all claims, controversies, or disputes*** . . . relating in any manner to Employee's hiring, ***employment, or termination of employment***, whether voluntary or involuntary, ***will be submitted to final and binding arbitration***." Compl., Ex. C (emphases added). Pompliano's Complaint consists entirely of claims "relating" to his employment and termination of employment. This Court accordingly should compel his lawsuit back to arbitration, where it belongs.

Moreover, even if arbitrability were a close question here—and it is not—the outcome would be the same: the case still should be sent to the arbitrator. That is so because the arbitration agreement goes on to command that "disagreements over the arbitrability of any claim, controversy, or dispute or the arbitrator's jurisdiction . . . will be resolved by the arbitrator." Compl., Ex. C. Pompliano should not be allowed to circumvent that provision, especially given that he himself invoked arbitration and has been arbitrating for months. At the least, the Court should order Pompliano to submit his Complaint to the arbitrator so the arbitrator can rule on arbitrability.

Arbitration is a particularly appropriate outcome in this case because for months now, Pompliano has been abusing the litigation process to drum up publicity. Among other things, he has larded up his complaints with false allegations about Snap's user metrics. His legal team has fed inflammatory quotes to the media. He has claimed in court filings that Snap prevented him from finding a job, but has conveniently forgotten to mention that he actually found a job soon after leaving Snap—and got fired there too, and sued that company too, again claiming fraud. And at every turn, he has preposterously suggested that a change to Snap's user-metric calculations in *2015* somehow shows that Snap misled investors during its *2017* IPO—even though he himself admits Snap disclosed the change in its IPO filings.

At the end of the day, Pompliano is simply an employee who was fired for poor performance. His grandiose claims—and his attorneys' press statements and media interviews about Snap's IPO and valuation—are not based on evidence. They instead are tailor-made to drum up press, to move markets, and presumably to increase pressure on Snap to settle.

The Court should not allow itself to be used as a tool to gain leverage. It should instead insist that Pompliano pursue his claims in the venue he agreed upon by contract: binding arbitration. The motion to compel should be granted.

LAW OFFICES
**Allen Matkins Leck Gamble**
**Mallory & Natsis LLP**

1042624/SF

-6-
DEFTS' MPA IN SUPPORT OF MOTION TO COMPEL ARBITRATION AND TO
DISMISS OR, IN THE ALTERNATIVE, STAY ACTION

## II.  Factual And Procedural Background

### A.  Statement of facts.

#### 1.  Pompliano's employment and agreement to arbitrate with Snap.

Pompliano was an at-will employee of Snap. He was employed for only three weeks in 2015 before his employment was terminated. Compl., ¶ 11. When Pompliano started his employment, the parties entered into a Mutual Agreement to Arbitrate Claims ("Agreement"). Compl., Ex. C. The Agreement broadly requires that all claims relating to Pompliano's employment or termination of employment from Snap must be arbitrated:

> Employee and Snapchat, Inc. (the Company) agree that, to the fullest extent permitted by law, any and all claims, controversies, or disputes between Employee and the Company . . . relating in any manner to Employee's hiring, employment, or termination of employment, whether voluntary or involuntary, will be submitted to final and binding arbitration (Arbitrable Claims) as the exclusive remedy for such claims, controversies, or disputes (Arbitration Agreement).

Compl., Ex. C.

The Agreement defines "Arbitrable Claims" to include any "statutory and common-law claims and penalties, fees, costs, or other expenses including attorneys' fees, whether under state, federal, or local law, including, but not limited to, theories arising under breach of contract, wrongful termination, negligence, defamation, infliction of emotional distress, misrepresentation, … tort, … or any other dispute between the parties under federal, state, or local law, …." *Id.*

The Agreement also delegates to the arbitrator the exclusive right to resolve disputes over its scope, including the arbitrability of claims:

> For clarity, disagreements over the arbitrability of any claim, controversy, or dispute or the arbitrator's jurisdiction, including any objections to the existence, scope, or validity of this Arbitration Agreement, will be resolved by the arbitrator.

*Id.*

LAW OFFICES
**Allen Matkins Leck Gamble
Mallory & Natsis LLP**

1042624/SF

-7-
DEFTS' MPA IN SUPPORT OF MOTION TO COMPEL ARBITRATION AND TO
DISMISS OR, IN THE ALTERNATIVE, STAY ACTION

### 2. Pompliano's termination for poor performance.

As Snap will show at the appropriate time in the appropriate forum, Pompliano was an employee who was fired for poor performance. Pompliano, however, alleges that Snap fired him because he allegedly discovered that Snap was misrepresenting various user metrics to advertisers, the public, and investors (and because he allegedly refused to recruit colleagues from his former employer over to Snap). Compl., ¶¶ 7, 8, 10. According to Pompliano, he complained about these metrics, raised the issue with several senior executives, and promptly was fired. *Id*. at ¶ 8.

These allegations properly belong before the arbitrator, and Snap is confident that it will prevail in that forum. It suffices to say briefly here that Pompliano's allegations about Snap's metrics are baseless. For example, Pompliano alleges that Snap was telling investors and others in mid-2015 that it had 100 million daily active users ("DAU"), when its own internal metrics were showing between 95 and 97 million. Compl., ¶¶ 6-7, 65. He also alleges that earlier on, in the first quarter of 2015, Snap was "touting the 100 million DAU figure" at a time when it only had 80 million DAU. Compl., ¶ 65. Put aside for a moment that these allegations are badly dated, and therefore do nothing to support Pompliano's grandiose suggestions that his case somehow relates to Snap's IPO nearly two years later. The more important point is that Pompliano's premise is simply wrong: Snap was not "touting" in Q1 2015 or mid-2015 that the app had 100 million DAU. Snap was and is very careful to be accurate with its statements about metrics. Pompliano fails to identify who made these allegedly false statements to investors, to which investors they were made, or how he is aware of such statements. He provides no support for these allegations—unsurprising because he worked at Snap for three weeks, was not on the executive team, and did not even interact with investors. The allegations reflect his slapdash approach to litigation. Snap will demonstrate as much in arbitration.

LAW OFFICES
**Allen Matkins Leck Gamble
Mallory & Natsis LLP**

1042624/SF

-8-
DEFTS' MPA IN SUPPORT OF MOTION TO COMPEL ARBITRATION AND TO
DISMISS OR, IN THE ALTERNATIVE, STAY ACTION

**B.     Procedural history.**

     **1.     July 27, 2016: Pompliano invokes the parties' Agreement, filing a demand for arbitration against Snap.**

On July 27, 2016, invoking the parties' written Agreement, Pompliano filed a demand for arbitration against Snap and the individual Defendants (the "Arbitration Demand"). The Arbitration Demand includes causes of action for: (1) wrongful termination, (2) fraudulent inducement of employment contract, (3) breach of contract, (4) breach of the covenant of good faith and fair dealing, (5) intentional infliction of emotional distress, and (6) violation of the California Labor Code (Section 201, *et seq.*). Declaration of Baldwin J. Lee ("Lee Decl."), ¶ 2. These same six claims are now repeated in the Complaint he filed in this Court.

The parties participated in the arbitrator selection process, which led to the assignment of Hon. Rex Heeseman (Ret.). Lee Decl., ¶ 3. On October 25, 2016, the parties participated in a case management conference with Arbitrator Heeseman and agreed to a litigation schedule and hearing date: September 11-15, 2017. *Id.*

     **2.     January 4, 2017: Pompliano files a civil complaint in Los Angeles Superior Court alleging a single claim for purported violation of Labor Code Section 1050.**

On January 4, 2017, Pompliano filed a civil complaint in Los Angeles Superior Court, alleging a single claim for purported violation of Labor Code Section 1050. Lee Decl., ¶ 4. He claimed that Snap made misrepresentations to prospective employers that prevented him from finding a job following his firing. *Id.*

Pompliano used this new claim as a hook to take his case public, rather than remain in arbitration as he should have done. Notably, Pompliano did not seek to amend his Arbitration Demand to add a Section 1050 claim, even though he could easily have done so. Lee Decl., ¶ 5. Nor did he contact Snap's counsel to make a cease-and-desist request or to discuss any misrepresentations Snap allegedly made to prospective employers. *Id.*

1    Moreover, Pompliano's new state court allegation did not tell a complete or

2    accurate story. The key allegation in his state court complaint—repeated in his

3    current Complaint—was that Snap maligned him to the point of making him

4    unemployable. But that is demonstrably false. In fact, Pompliano found a job with

5    another tech company in the social-media space not long after leaving Snap. And in

6    a twist that will sound familiar, Pompliano quickly got fired from that job, too, and

7    then hit that employer with a lawsuit that also raises allegations of fraud. *See*

8    *Pompliano v. Brighten Labs Inc.*, Los Angeles Superior Court Case No. BC613185.

9    Pompliano failed to mention this subsequent employment in either his state-court

10   suit or his current Complaint.

11       On January 18, 2017, Snap filed a petition to compel arbitration of

12   Pompliano's Section 1050 claim. Lee Decl., ¶ 6. Snap's petition was scheduled for

13   hearing on September 22, 2017. *Id*.

14       On May 4, the parties attended a case management conference with Judge

15   Rico in Los Angeles Superior Court. Lee Decl., ¶ 7. At the conference, Judge Rico

16   rejected Pompliano's request to conduct discovery prior to the September 22

17   petition hearing. *Id*.

18                   **3.    May 16, 2017: Pompliano files this action, re-alleging the**
                     **same claims he is litigating in pending arbitration and state**
19                   **court, and adding purported whistleblower claims.**

20       On May 16, 2017, less than two weeks after Superior Court Judge Rico

21   rejected Pompliano's request to conduct discovery before determination of the

22   petition to compel arbitration, Pompliano filed this action. In his Complaint, he

23   alleges the same six state law claims already being litigated in the arbitration

24   proceedings he initiated, as well as the Section 1050 claim he brought in state court.

25   In addition, he adds whistleblower claims under federal (15 U.S.C. § 78u-6

26

27

28

LAW OFFICES
**Allen Matkins Leck Gamble**
**Mallory & Natsis LLP**

1042624/SF

-10-
DEFTS' MPA IN SUPPORT OF MOTION TO COMPEL ARBITRATION AND TO
DISMISS OR, IN THE ALTERNATIVE, STAY ACTION

1   ("Section 922") of Dodd-Frank Act) and state law (Labor Code Section 1102.5).[1]

2   Both new claims are based on his alleged wrongful termination of employment.

3   On May 23, 2017, one week after filing this action, Pompliano dismissed his

4   state court action. Lee Decl., ¶ 8. He still is litigating, however, the arbitration

5   proceeding he initiated. *Id.*

6   ## III.   Analysis

7   Pompliano's claims should be in the forum the parties agreed to by contract:

8   arbitration. The arbitration agreement he signed is clear, enforceable, and plainly

9   encompasses all of his claims. The Motion to Compel should be granted.

10  ### A.   The parties' Agreement requires Pompliano to arbitrate his alleged claims.

11

12  The analysis here is simple: Pompliano and Snap must arbitrate their dispute

13  because they agreed by contract to do so. The Agreement provides that "any and all

14  claims, controversies, or disputes" between them "relating in any manner to

15  [Pompliano's] hiring, employment, or termination of employment, whether

16  voluntary or involuntary, will be submitted to final and binding arbitration

17  (Arbitrable Claims) as the exclusive remedy for such claims, controversies, or

18  disputes." Compl., Ex. C. And the nine claims in Pompliano's Complaint all "relate

19  to" his hiring, employment, and termination. Compl., ¶¶ 108, 111-113, 117, 128-

20  129, 136, 142, 145-146, 152-155, 160-163. Thus, all nine claims are plainly covered

21  by the Agreement and must be "submitted to final and binding arbitration." Compl.,

22  Ex. C. Courts have routinely held that language like that in the Agreement requires

23  arbitration. *See, e.g., Galvan v. Michael Kors USA Holdings, Inc.*, No. CV 16-

24

25  [1]  Pompliano attaches to his Complaint (as Exhibit D) a PowerPoint presentation
26  containing Snap's confidential and proprietary information. The Court has
     ordered Pompliano to meet and confer with Snap regarding filing of the
27  presentation under seal. This presentation should not be filed at all, including
     because this action should be compelled to arbitration. Accordingly, the sealing
28  issue may be moot. Should that document need to be filed, Snap will file an
     application in support of maintaining the redactions Pompliano included when he
     originally filed it.

LAW OFFICES
**Allen Matkins Leck Gamble
Mallory & Natsis LLP**

1042624/SF

-11-

DEFTS' MPA IN SUPPORT OF MOTION TO COMPEL ARBITRATION AND TO
DISMISS OR, IN THE ALTERNATIVE, STAY ACTION

07379-BRO (AFMx), 2017 U.S. Dist. LEXIS 9059 at *4, *29 (C.D. Cal. Jan. 19, 2017) (granting motion to compel arbitration based on agreement stating that "the Company and Employee agree that any and all disputes, claims or controversies arising out of or relating to this Agreement, the employment relationship between the parties, or the termination of the employment relationship, shall be resolved by binding arbitration"); *Quevedo v. Macy's, Inc.*, 798 F. Supp. 2d 1122, 1127, 1142 (C.D. Cal. 2011) (granting motion to compel arbitration based on agreement that required arbitration for "all employment-related legal disputes, controversies or claims arising out of, or relating to, employment or cessation of employment").

Moreover, the parties' Agreement is governed by the Federal Arbitration Act and is fundamentally valid and enforceable—points Pompliano has never disputed. The FAA embodies "a liberal federal policy favoring arbitration agreements, notwithstanding any state substantive or procedural policies to the contrary." *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 346 (2011) (internal quotes and citations omitted). In any case, the Agreement, which incorporates the JAMS Employment Arbitration Rules, meets the essential fairness requirements the California Supreme Court set forth in *Armendariz Found. Health Pysch. Services, Inc.*, 24 Cal. 4th 83, 103-13 (2000); Compl., Ex. C. Specifically, the Agreement requires use of a neutral arbitrator and provides for adequate discovery, mandates a written award, empowers the arbitrator to award any relief that would otherwise be available in court, and obligates Snap to pay the costs unique to arbitration. *Id.*

Indeed, Pompliano has already invoked the Agreement to initiate a binding arbitration proceeding against Defendants. That alone confirms the Agreement's validity and enforceability, and it estops Pompliano from disputing that the Agreement encompasses the six claims he is already arbitrating. After all, "[e]quitable estoppel, which applies to arbitration agreements, precludes a party from claiming the benefits of a contract while simultaneously attempting to avoid the burdens that contract imposes." *Alliance Bank of Ariz. v. Patel*, No. CV 13-736

LAW OFFICES
**Allen Matkins Leck Gamble
Mallory & Natsis LLP**

1042624/SF

-12-
DEFTS' MPA IN SUPPORT OF MOTION TO COMPEL ARBITRATION AND TO
DISMISS OR, IN THE ALTERNATIVE, STAY ACTION

CAS (JCx), 2013 U.S. Dist. LEXIS 79202 at *8-9 (C.D. Cal. June 3, 2013) (internal citations and quotations omitted).

Nor does Pompliano have any valid argument to avoid arbitration for the three remaining claims that he asserted for the first time in court. His claim for violation of Labor Code Section 1050 is covered expressly by the Agreement, which provides in relevant part: "Arbitrable Claims include but are not limited to statutory and common-law claims . . . whether under state, federal, or local law, including, but not limited to, theories arising under . . . the California Labor Code. . . ." Compl., Ex. C. And the Section 1050 claim "relates to" Pompliano's employment and termination, as his own allegations establish—*i.e.*, it is based on Defendants' alleged misrepresentations relating to his Snap employment and firing. Compl., ¶¶ 157-163.

As for the other two new claims—the whistleblower claims under the Dodd-Frank Act ("Section 922") and California Labor Code Section 1102.5—the outcome is the same. The claims—which fancifully recast Pompliano's termination for poor performance as retaliation for reporting imagined wrongdoing—no doubt "relat[e] to" Pompliano's employment or termination of employment.[2] Compl., ¶¶ 102-108, 111-113, Ex. C. Nor is there any question that they are covered claims under the Agreement because they are "statutory . . . claims . . . whether under state, federal, or local law, . . . or any other dispute between the parties under federal, state, local law. . . ." Compl., Ex. C. These two claims therefore are subject to binding arbitration.

It also makes no difference that these claims are self-styled whistleblower claims. Courts have routinely compelled Dodd-Frank Section 922 whistleblower

---

[2]   In fact, Pompliano has effectively conceded as much. His whistleblower claims are based on the same allegations as his wrongful termination claim (*see* Compl., ¶¶ 102-108; 111-113), and Pompliano conceded that the wrongful termination claim is subject to binding arbitration by asserting that claim in his Arbitration Demand. Lee Decl., ¶ 2. If the wrongful termination claim "relates to" Pompliano's employment or termination, then so do his new claims.

LAW OFFICES
**Allen Matkins Leck Gamble
Mallory & Natsis LLP**

1042624/SF

-13-

DEFTS' MPA IN SUPPORT OF MOTION TO COMPEL ARBITRATION AND TO
DISMISS OR, IN THE ALTERNATIVE, STAY ACTION

claims to arbitration, holding that "[t]he text and structure of Dodd-Frank compel the conclusion that whistleblower claims brought pursuant to [Dodd-Frank] are not exempt from predispute arbitration agreements." *Khazin v. TD Ameritrade Holding Corp.*, 773 F.3d 488, 492 (3d Cir. 2014); *see also Ruhe v. Masimo Corp.*, No. SACV 11-00734-CJC (JCGx), 2011 U.S. Dist. LEXIS 104811, at *12-13 (C.D. Cal. 2011) (Carney, J.) (same); *Murray v. UBS Sec., LLC*, 2014 U.S. Dist. LEXIS 9696, at *20-34 (S.D.N.Y. Jan. 27, 2014) (same); *but see Wiggins v. ING U.S., Inc.*, No. 3:14-CV-1089 (JCH), 2015 U.S. Dist. LEXIS 78129, at *16-19 (D. Conn. June 17, 2015) (finding Dodd-Frank whistleblower claim exempt from predispute arbitration agreement). Courts also have routinely granted arbitration of Labor Code Section 1102.5 claims, just like any other employment claim in California. *See Elmore v. CVS Pharm., Inc.*, No. 2:16-cv-05603-ODW (ASx), 2016 U.S. Dist. LEXIS 156481, at *5, *10 (C.D. Cal. Nov. 9, 2016); *Totten v. Kellogg Brown & Root, LLC*, No. 5:15-cv-01876-ODW-kkx, 2016 U.S. Dist. LEXIS 18558, at *1, *14 (C.D. Cal. Feb. 10, 2016); *Jacovides v. Future Foam, Inc.*, No. 2:16-cv-01842-CAS (AJWx), 2016 U.S. Dist. LEXIS 57530 (C.D. Cal. Apr. 25, 2016).

In sum, all of the claims Pompliano has asserted in this action are arbitrable both under the Agreement's clear language and pursuant to applicable law.

**B.    The parties' Agreement clearly and unmistakably delegates the question of arbitrability to the arbitrator.**

Even if there were any doubt about arbitrability here, that question would be for the arbitrator to resolve.

"[W]hether the court or the arbitrator decides arbitrability is 'an issue for judicial determination unless the parties *clearly and unmistakably provide otherwise*.' [Citation omitted.]" *Mohamed v. Uber Technologies, Inc.*, 848 F.3d 1201, 1208 (9th Cir. 2016) (emphasis in original); *see also Howsam v. Dean Witter Reynolds*, 537 U.S. 79, 83 (2002); *Simmons v. Hankey*, No. 2:16-cv-06125-ODW (JEMx), 2017 U.S. Dist. LEXIS 13388, at *5 (C.D. Cal. Jan. 30, 2017); *Tiri v. Lucky*

*Chances, Inc.*, 226 Cal. App. 4th 231, 241-42 (2014). "Clear and unmistakable evidence of an agreement to arbitrate arbitrability 'might include . . . a course of conduct demonstrating assent . . . or . . . an express agreement to do so.'" *Momot v. Mastro*, 652 F.3d 982, 988 (9th Cir. 2011) (quoting *Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S. 63, 79-80 (2010) (Stevens, J., dissenting); *Mohamed*, 848 F.3d at 1208.

Here the question of arbitrability is for the arbitrator because the parties "clearly and unmistakably" provided as much in the arbitration Agreement:

> For clarity, ***disagreements over the arbitrability of any claim, controversy, or dispute*** or the arbitrator's jurisdiction, including any objections to the existence, scope, or validity of this Arbitration Agreement, ***will be resolved by the arbitrator***.

Compl., Ex. C (emphases added).

That is about as clear and unmistakable as you can get. And indeed, it is even clearer than the agreements that the Ninth Circuit found to meet the "clear and unmistakable" test in *Mohamed* and *Momot*. In *Mohamed*, the agreement provided that it "requires all such disputes to be resolved only by an arbitrator through final and binding arbitration and not by way of court or jury trial," and that "such disputes include without limitation disputes arising out of or relating to interpretation or application of this Arbitration Provision[.]" *Mohamed*, 848 F.3d at 1207-1208. The *Mohamed* court held that this language "clearly and unmistakably delegated the question of arbitrability to the arbitrator." *Id*. at 1208. Likewise, in *Momot*, the agreement provided that "[i]f a dispute arises out of or relates to this Agreement . . . or the validity or application of any of the provisions of this Section 4, and, if the dispute cannot be settled through negotiation, the dispute shall be resolved exclusively by binding arbitration." *Momot*, 652 F.3d at 988 (emphasis in original). The *Momot* court held that that language, too, meets the "clear and unmistakable" test. *Id*. The Agreement here is even clearer because it expressly calls out "disagreements over the arbitrability of any claim." Compl., Ex. C. It meets the "clear and unmistakable" test *a fortiori*.

LAW OFFICES
**Allen Matkins Leck Gamble
Mallory & Natsis LLP**

1042624/SF

-15-

DEFTS' MPA IN SUPPORT OF MOTION TO COMPEL ARBITRATION AND TO
DISMISS OR, IN THE ALTERNATIVE, STAY ACTION

1    In short, the arbitrability question must be submitted to Arbitrator Heeseman.

2   Particularly in a case like this one—where Pompliano himself is the one who filed

3   the Arbitration Demand, and where he has been taking advantage of the arbitration

4   proceeding for months—he cannot flout the parties' clear delegation.

5        **C.    The Court should send the matter to the arbitrator because Pompliano cannot meet the stringent "wholly groundless" standard.**

6

7        When parties have agreed to have an arbitrator decide the question of

8   arbitrability, the court's inquiry is strictly limited. *Qualcomm, Inc. v. Nokia Corp.*,

9   466 F.3d 1366, 1373, n.5 (Fed. Cir. 2006). The court does not conduct a plenary

10  review of the arbitration agreement and whether it covers the asserted claims. *Id.*

11  Instead, the court may only examine whether the moving party's assertion of

12  arbitrability is "wholly groundless." *Id.* at 1371; *see also Dream Theatre, Inc. v.*

13  *Dream Theater*, 124 Cal. App. 4th 547, 553 (2004). And "[i]f the court finds that the

14  assertion of arbitrability is not 'wholly groundless,' then it should stay the trial of

15  the action pending a ruling on arbitrability by an arbitrator." *Qualcomm*, 466 F.3d at

16  1371; *see also id.* at 1374 ("Because any inquiry beyond a 'wholly groundless' test

17  would invade the province of the arbitrator, whose arbitrability judgment the parties

18  agreed to abide by in the [] Agreement, the district court need not, and should not,

19  determine whether [the] defenses are in fact arbitrable"); *Dream Theatre*, 124 Cal.

20  App. 4th at 558 (reversing trial court's order staying arbitration and remanding with

21  instruction that the litigation be stayed pending the arbitrator's determination of the

22  scope of his or her jurisdiction).

23       The Court should order the Complaint to Arbitrator Heeseman because

24  Snap's Motion is far from "wholly groundless." The Agreement's plain language

25  broadly states that all disputes "relating in any manner" to Pompliano's employment

26  and termination from employment must be arbitrated, including Labor Code claims.

27  As discussed above, six of the nine claims in the Complaint already are in

28  arbitration. And the three remaining claims clearly fall within the Agreement's

LAW OFFICES
**Allen Matkins Leck Gamble
Mallory & Natsis LLP**

1042624/SF

-16-
DEFTS' MPA IN SUPPORT OF MOTION TO COMPEL ARBITRATION AND TO
DISMISS OR, IN THE ALTERNATIVE, STAY ACTION

1   scope because they relate to Pompliano's employment or termination. Because

2   Defendants' Motion plainly is not "wholly groundless," the Court should order the

3   matter to arbitration. *See Qualcomm*, 466 F.3d at 1371, 1374; *Dream Theatre*, 124

4   Cal. App. 4th at 553, 558.

5         **D.**    **The Court should dismiss Pompliano's Complaint because all of his**
    **claims are subject to arbitration under the parties' Agreement or,**

6   **alternatively, it should stay the action pending completion of the**
    **arbitration proceeding.**

7

8         Because Pompliano's claims are subject to arbitration, the Court should not

9   just grant the motion to compel arbitration but should exercise its discretion to

10  dismiss all the claims with prejudice. *See Sparling v. Hoffman Constr.*, 864 F.2d

11  635, 638 (9th Cir. 1988) (district court properly exercised its discretion in

12  dismissing an action where all claims were subject to arbitration); *see also Thinket*

13  *Ink Info. Res., Inc. v. Sun Microsystems, Inc.*, 368 F.3d 1053, 1060 (9th Cir. 2004)

14  (same); *Lewis v. UBS Fin. Services*, 818 F. Supp. 2d 1161, 1169 (N.D. Cal. Sept. 30,

15  2011).

16        Even if the Court does not dismiss Pompliano's claims upon compelling

17  arbitration of them, it must at minimum stay this action pending completion of the

18  arbitration proceedings before Arbitrator Heeseman. Under 9 U.S.C. § 3, the court,

19  in any action "referable to arbitration under an agreement in writing . . . upon being

20  satisfied that the issue involved in such suit or proceeding is referable to arbitration

21  under such an agreement, shall on application of one of the parties stay the trial of

22  the action until such arbitration has been had in accordance with the terms of the

23  agreement." The stay provision is mandatory. 9 U.S.C. § 3.

24  **IV.**   **Conclusion**

25        For the reasons set forth above, the Court should compel arbitration of all of

26  the claims in Pompliano's Complaint. The Court also should dismiss this action with

27

28

LAW OFFICES
**Allen Matkins Leck Gamble
Mallory & Natsis LLP**

1042624/SF

-17-
DEFTS' MPA IN SUPPORT OF MOTION TO COMPEL ARBITRATION AND TO
DISMISS OR, IN THE ALTERNATIVE, STAY ACTION

1   prejudice, or alternatively should stay this matter pending determination by the

2   arbitrator, Hon. Rex Heeseman (Ret.).

3

4   Dated:  June 13, 2017                    ALLEN MATKINS LECK GAMBLE
                                            MALLORY & NATSIS LLP
5

6                                    By:_____/s/ *Baldwin J. Lee*_____

7                                          BALDWIN J. LEE
                                          Attorneys for Defendants
8                                          SNAP INC., EVAN SPIEGEL,
                                          BRIAN THEISEN, AND IMRAN
9                                          KHAN

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

LAW OFFICES
**Allen Matkins Leck Gamble
Mallory & Natsis LLP**

1042624/SF

-18-
DEFTS' MPA IN SUPPORT OF MOTION TO COMPEL ARBITRATION AND TO
DISMISS OR, IN THE ALTERNATIVE, STAY ACTION