1  **Pierce Sergenian LLP**
2  John M. Pierce (SBN 250443)
   john@piercesergenian.com
3  David A. Sergenian (SBN 230174)
4  david@piercesergenian.com
   600 Wilshire Boulevard, Suite 500
5  Los Angeles, CA 90017-3212
6  (213) 435-2035

7  Attorneys for plaintiff
8

9          THE UNITED STATES DISTRICT COURT
10      FOR THE CENTRAL DISTRICT OF CALIFORNIA

11

12 **Anthony Pompliano,**            | Case No. 2:17–cv–3664 DMG
                                     | (JPRx)
13              plaintiff,           | Hon. Dolly M. Gee
14        v.
                                     | **Plaintiff Anthony**
15 **Snap Inc., d.b.a. Snapchat,**   | **Pompliano's Opposition to**
16 *et al.*,                         | **Motion to Compel**
                                     | **Arbitration**
17              defendants.
18                                   | Date:    July 14, 2017
                                     | Time:    9:30 a.m.
19                                   | Crtrm:   8C
                                     | Judge:   Hon. Dolly M. Gee
20
21
22
23
24
25
26
27
28

# TABLE OF CONTENTS

I.    INTRODUCTION ............................................................. 1

II.   PROCEDURAL HISTORY ............................................. 2

III.  FACTUAL BACKGROUND ........................................... 5

IV.  LEGAL STANDARD .................................................... 10

V.   ARGUMENT ................................................................. 11

    A.   The Delegation Clause Is Unenforceable Because It Is Ambiguous and Unconscionable .......................................... 11

        1.   There Is No Clear and Unmistakable Evidence the Parties Agreed to the Delegation Clause ................... 12

        2.   The Delegation Clause Is Unenforceable Because It Is Unconscionable .......................................... 15

            a.   The Delegation Clause Is Procedurally Unconscionable.................................... 15

            b.   The Delegation Clause Is Substantively Unconscionable.................................... 17

    B.   The Arbitration Agreement as a Whole Is Unenforceable Because It Is Unconscionable ................. 19

        1.   The Arbitration Agreement as a Whole Is Procedurally Unconscionable.......................... 19

        2.   The Arbitration Agreement as a Whole Is Substantively Unconscionable .................... 20

    C.   Pompliano's Claim for Violation of California Labor Code § 1050 Is Not Subject to Arbitration ..................... 21

D.    Pompliano's Whistleblower Claims and Related Claims Are Not Subject to Arbitration .................................................... 22

E.    Equitable Estoppel Does Not Apply Here ............................ 24

VI.   CONCLUSION ................................................................. 25

**Opp'n to Mot. to Compel Arbitration**

# TABLE OF AUTHORITIES

## Cases

*Abramson v. Juniper Networks, Inc.*,
  115 Cal. App. 4th 638 (2004).............................................................. 18

*Ajamian v. CantorCO2e, L.P.*,
  203 Cal. App. 4th 771 (2012) ...................................................... 12, 17

*Alliance Bank of Ariz. V. Patel*,
  Case No. CV 13–736, 2013 WL 2432313 (C.D. Cal. Jun. 3, 2013)
  ........................................................................................................ 24, 25

*Aral v. Earthlink, Inc.*,
  134 Cal. App. 4th 544 (2005) ............................................................. 15

*Armendariz Found. Health Psychcare Servs., Inc.*,
  24 Cal.4th 83 (2000) ...........................................................15, 18, 21

*AT&T Mobility LLC v. Concepcion*,
  563 U.S. 333 (2011) ............................................................................ 10

*Attia v. Neiman Marcus Group, Inc.*,
  Case No. 16–0504–DOC, 2016 WL 8902584
  (C.D. Cal. Jun. 27, 2016) ............................................................ 16, 17

*Chavez v. Bank of Am.*,
  Case No. C 10–653 JCS, 2011 WL 4712204
  (N.D. Cal. Oct. 7, 2016) ..................................................................... 10

*Chiron Corp. v. Ortho Diagnostic Sys., Inc.*,
  207 F.3d 1126 (9th Cir. 2000) ........................................................... 10

*Daghlian v. DeVry Univ., Inc.*,
  461 F. Supp. 2d 1121 (C.D. Cal. 2006) ............................................ 21

*Doctor's Assocs., Inc. v. Casarotto*,
  517 U.S. 681 (1996) ............................................................................ 10

*Elmore v. CVS Pharmacy, Inc.*,
  Case. No. 2:16–cv–05603, 2016 WL 6635625
  (C.D. Cal. Nov. 9, 2016) ..................................................................... 24

*First Options of Chi., Inc. v. Kaplan,*
   514 U.S. 938 (1995) .................................................................... 11

*Flores v. Transamerica HomeFirst, Inc.,*
   93 Cal. App. 4th 846 (2001) ...........................................15, 16

*Free Range Contend, Inc. v. Google Inc.,*
   Case No. 14–cv–02329–BLF, 2016 WL 2902332
   (N.D. Cal. May 13, 2016) ...................................................... 15

*Gutierrez v. Autowest, Inc.,*
   114 Cal. App. 4th 77 (2003)................................................. 18

*Howsam v. Dean Witter Reynolds, Inc.,*
   537 U.S. 79 (2002) ................................................................. 11

*In re Lumbermans Mortg. Co.,*
   712 F.2d 1334 (9th Cir. 1983) ........................................... 14

*Ingle v. Circuit City Stores, Inc.,*
   328 F.3d 1165 (9th Cir. 2003) ........................................... 15

*Jacovides v. Future Foam, Inc.,*
   Case No. 2:16–cv–01842, 2016 U.S. Dist. LEXIS 57530
   (C.D. Cal. Apr. 25, 2016) ..................................................... 24

*Jones v. R.R. Donnelly & Sons, Co.,*
   541 U.S. 369 (2004). ............................................................. 23

*Jones v. Wells Fargo Bank,*
   112 Cal. App. 4th 1527 (2003) ....................................17, 18

*Khazin v. TD Ameritrade Holding Corp.,*
   773 F.3d 488 (3rd Cir. 2014) ............................................. 22

*Kilgore v. KeyBank, Nat'l Ass'n,*
   673 F.3d 947 (9th Cir. 2012) ....................................10, 15

*Lima v. Gateway, Inc.,*
   886 F. Supp. 2d 1170 (C.D. Cal. Aug. 7, 2012) ................ 18

*Mercuro v. Superior Court,*
   96 Cal. App. 4th 167 (2002) ............................................... 18

**Opp'n to Mot. to Compel Arbitration**

*Mikhak v. University of Phoenix,*
   Case No. C16–00901–CRB, 2016 WL 3401763
   (N.D. Cal. Jun. 21, 2016) ............................................................12, 17

*Mohamed v. Uber Technologies, Inc.,*
   848 F.3d 1201 (9th Cir. 2016) .......................................................... 19

*Momot v. Mastro,*
   652 F.3d 982 (9th Cir. 2011) ...............................................11, 12, 19

*Morris v. Redwood Empire Bancorp,*
   128 Cal. App. 4th 1305 (2005) .......................................................... 17

*Murray v. UBS Sec., LLC,*
   Case No. 12 Civ 5914, 2014 WL 285093
   (S.D.N.Y. Jan. 27, 2014) ................................................................... 22

*Nagrampa v., MailCoups, Inc.,*
   469 F.3d 1257 (9th Cir. 2006) .....................................................17, 20

*Oracle Am., Inc. v. Myriad Grp., A.G.,*
   724 F.3d 1069 (9th Cir. 2013) .......................................................... 11

*Parada v. Superior Court,*
   176 Cal. App. 4th 1554 (2009) .....................................................13, 18

*Perez v. Maid Brigade, Inc.,*
   Case No. C 07–3473 SI, 2007 WL 2990368
   (N.D. Cal. Oct. 11, 2007) ................................................................. 11

*Perry v. Thomas,*
   482 U.S. 483 (1987) ........................................................................ 10

*Pinela v. Neiman Marcus Group, Inc.,*
   238 Cal. App. 4th 227 (2015) .......................................................... 17

*Pokorny v. Quixtar, Inc.,*
   601 F.3d 987 (9th Cir. 2010) .....................................................17, 18

*Qualcomm, Inc. v. Nokia Corp.,*
   466 F.3d 1366 (Fed. Cir. 2006) ........................................................ 12

*Rent–A–Center, West, Inc. v. Jackson,*
   561 U.S. 63 (2010) .......................................................................... 11

Opp'n to Mot. to Compel Arbitration

*Ruhe v. Masimo Corp.*,
  Case No. SACV 11–00734–CJC, 2011 WL 4442790
  (C.D. Cal. Sep. 16, 2011) .................................................................... 22

*Stewart v. Doral Financial Corp.*,
  997 F.Supp.2d. 129 (D. Puerto Rico 2014) ........................................ 23

*Szetela v. Discover Bank*,
  97 Cal. App. 4th 1094 (2002) .............................................................. 17

*Thompson v. Toll Dublin, LLC*,
  165 Cal. App. 4th 1360 (2008) ............................................................ 18

*Totten v. Kellogg Brown & Root, LLC*,
  152 F. Supp. 3d 1243 (C.D. Cal. 2016) ............................................... 24

*Vargas v. Delivery Outsourcing, LLC*,
  Case No. 15–cv–03408–JST, 2016 WL 946112
  (N.D. Cal. Mar. 14, 2016) ............................................................. 12, 16

*Volt Info. Scis., Inc. v. Bd. of Trs. of Leland Stanford Junior Univ.*,
  489 U.S. 468 (1989) ............................................................................. 10

*Wiggins v. ING U.S., Inc.*,
  Case No. 3:14–CV–1089, 2015 WL 3771646
  (D. Conn. Jun. 17, 2015) ............................................................... 22, 23

## Statutes

9 U.S.C. §§ 1–16 ................................................................................... 10

15 U.S.C. § 78u-6 ........................................................................ 4, 22, 23

18 U.S.C. § 1514A .................................................................... 22, 23, 24

California Civil Code § 1642 ................................................................ 14

California Labor Code § 201 ................................................................... 2

California Labor Code § 226 ................................................................... 2

California Labor Code § 432 ................................................................... 2

California Labor Code § 970 ................................................................... 2

**Opp'n to Mot. to Compel Arbitration**

California Labor Code § 1050 ...........................................................2, 3, 21

California Labor Code § 1102.5 ...................................................... 4, 24

California Labor Code § 1198.5 ............................................................. 2

**Opp'n to Mot. to Compel Arbitration**

## I.  INTRODUCTION

The Court should deny defendants' motion to compel arbitration because the arbitration agreement at issue here (including the delegation clause which provides that the arbitrator must decide issues of arbitrability) is unenforceable as an adhesion contract that is substantively unconscionable. In this regard, defendants' opening paragraph makes Pompliano's case for him: "As part of [Pompliano's] employment negotiation, Snap bargained for and Pompliano signed an arbitration agreement." (Mot. at p. 5.) That statement is accurate: Snap Inc., a billion-dollar company, did all the bargaining; Pompliano signed. Snap Inc., in conjunction with in-house attorneys, dictated the terms of the arbitration agreement as a condition of Pompliano's employment. They told him that if he wanted to work for Snap Inc., he had to sign the arbitration agreement (which relegates all of his claims to arbitration) and an assignment agreement (which allows defendants to sue Pompliano in court). And he had to return the signed documents to Snap Inc. the same day.

The arbitration agreement is a contract of adhesion (i.e., procedurally unconscionable): Pompliano had no legal training, no experience negotiating written employment or arbitration agreements, and no understanding of the rights he was signing away (nor would a reasonable person in his position). By purporting to require Pompliano to arbitrate all of his claims against defendants (and have the issue of arbitrability decided by an arbitrator) while allowing defendants to pursue claims against Pompliano in court (where the issue of arbitrability would not even arise), the arbitration and assignment agreements are so one-sided in Snap Inc.'s favor and non-mutual that they are substantively unconscionable. Furthermore, the arbitration agreement, including the delega-

**Opp'n to Mot. to Compel Arbitration**

1   tion clause, is ambiguous and uncertain in that it fails to show both par-
2   ties' clear and unmistakable intent to submit Pompliano's claims to arbi-
3   tration and have an arbitrator determine the issue of arbitrability. Ac-
4   cordingly, the delegation clause (and the arbitration agreement as a
5   whole) is unenforceable.

6       In addition, many of Pompliano's claims are not subject to the arbi-
7   tration agreement by its own terms. For example, Pompliano's claim for
8   injunctive relief pursuant to California Labor Code § 1050 falls outside
9   the scope of the arbitration agreement, which permits Pompliano to seek
10  provisional relief in court. Finally, Pompliano's whistleblower claims and
11  related claims cannot be arbitrated, as they are subject to the anti-arbi-
12  tration provision of the Sarbanes–Oxley Act, from which the whistle-
13  blower claims arise.

## II. PROCEDURAL HISTORY

15      Plaintiff Anthony Pompliano filed a statement of claims in arbitra-
16  tion on July 27, 2016, in JAMS against Snap Inc. (formerly Snapchat,
17  Inc.)[1] and its officers Evan Spiegel, Brian Theisen, and Imran Khan.
18  (Sergenian Decl. ¶ 2; Ex. A.) The Honorable Rex Heeseman (Ret.) is pre-
19  siding over the arbitration. (Sergenian Decl. ¶ 2.) The claims in arbitra-
20  tion are for: (1) wrongful termination in violation of public policy; (2)
21  fraudulent inducement of employment contract (Cal. Labor Code § 970);
22  (3) breach of contract; (4) breach of the covenant of good faith and fair
23  dealing; (5) intentional infliction of emotional distress; and (6) violation
24  of California Labor Code § 201, *et seq.* (Ex. A.)

25      Subsequently, on November 8, 2016, Pompliano's counsel requested

26

27  _____

[1] The names "Snapchat" and "Snap Inc." are used interchangeably in this
28  brief.

1   Pompliano's employment records from Snap Inc. pursuant to California

2   Labor Code §§ 226(b), 432, and 1198.5(a). (Sergenian Decl. ¶ 4; Ex. B.) To

3   date, Snap Inc. has refused to provide Pompliano's employment records

4   pursuant to that request.[2]

5       On November 18, 2016, Judge Heeseman set the arbitration hearing

6   for September 11–19, 2017. (Sergenian Decl. ¶ 6; Ex. D.)

7       Pompliano filed a state court action on January 4, 2017, against Snap

8   Inc., Los Angeles Superior Court Case No. BC 645641. (Sergenian Decl.

9   ¶ 7; Ex. E.) The state court complaint consists of a single claim for mis-

10  representation preventing a former employee from obtaining employ-

11  ment under California Labor Code § 1050, *et seq.* (*Id.*)

12      In response to the complaint, on January 18, 2017, Snap Inc. filed

13  two motions in state court: (1) a petition to compel arbitration; and (2) a

14  motion to seal portions of complaint. (Sergenian Decl. ¶ 8; Ex. F, G.) Snap

15  Inc. set the motion to seal portions of the complaint for hearing on April

16  17, 2017 (Ex. G); however, even though presumably there were earlier

17  dates available, Snap Inc. set the petition to compel arbitration to be

18  heard nine months later, September 22, 2017, which conveniently would

19  take place the week after the arbitration was scheduled to conclude. (Ex.

20  F.)

21      Although the arbitration was initiated almost one year ago, none of

---

22  [2] Snap Inc's counsel claims that Pompliano's employment records were

23  produced to his prior counsel at some unspecified date. (*See* Sergenian

24  Decl. ¶ 5; Ex. C at p. 2 ("You also asked about a request in the arbitration

25  by Mr. Pompliano for employment documents. Regarding that, we re-

    sponded last year, including providing Mr. Pompliano's personnel file

26  documents.").) However, after Pompliano's counsel pointed out that the

27  employment file did not appear in the case file, and asked Snap Inc.'s

    counsel to identify when the file was produced and to provide a copy of

28  the records, Snap Inc.'s counsel ignored the request. (Ex. C at p. 1.)

**Opp'n to Mot. to Compel Arbitration**

1 the parties have availed themselves of the arbitration forum in any sub-
2 stantive way. Pompliano served document demands on Snap Inc. on Jan-
3 uary 25, 2017. (Sergenian Decl. ¶ 9; Ex. H.) In its response, served on
4 March 1, 2017, Snap Inc. refused to produce any documents in the arbi-
5 tration. (Sergenian Decl. ¶ 9; Ex. I.) There has been no exchange of doc-
6 uments, no other written discovery, and no depositions have been taken
7 or scheduled. (Sergenian Decl. ¶ 9.) Accordingly, defendants' statement
8 that "[t]he arbitration proceeding [Pompliano] initiated is still being liti-
9 gated" (Lee Dec. ¶ 8) is misleading because no substantive proceedings
10 have occurred in arbitration to date.

11     A case management conference in the state court action was held in
12 chambers on May 4, 2017, before the Honorable Richard E. Rico. (Serge-
13 nian Decl. ¶ 10.) Contrary to Snap Inc.'s assertion, Judge Rico did not
14 "reject[ ] Plaintiff's request to conduct discovery prior to the September
15 22 petition hearing." (Lee Decl. ¶ 7.) To the contrary, the court and  coun-
16 sel discussed the hearing on Snap Inc.'s petition to compel arbitration,
17 and the court urged Snap Inc. to reschedule the hearing on the petition
18 on an earlier date, which it declined to do. Snap Inc. has not moved to
19 stay discovery pending a decision on the petition to compel arbitration.
20 (Sergenian Decl. ¶ 10.)

21     This action was filed on May 16, 2017, against Snap Inc., Spiegel,
22 Theisen, and Khan. (Sergenian Decl. ¶ 11.) In addition to asserting the
23 six causes of action previously asserted in arbitration and the cause of
24 action asserted in state court, the complaint also asserts causes of action
25 for violation of the Dodd–Frank whistleblower statute (15 U.S.C. § 78u-
26 6), and violation of California's whistleblower statute (Cal. Labor Code
27 § 1102.5). (Dkt. #1.)

28

1    Pompliano voluntarily dismissed the state court action without prej-
2    udice on May 26, 2017. (Sergenian Decl. ¶ 12; Ex. J.)

3    **III. FACTUAL BACKGROUND**

4    Pompliano is a 2011 graduate of Bucknell University, where he ma-
5    jored in sociology and economics. (Pompliano Decl. ¶ 2.) Pompliano is not
6    an attorney, and he holds no professional licenses. (Pompliano Decl. ¶ 3)
7    Prior to and during his employment with Snap Inc., Pompliano had no
8    experience negotiating written employment or arbitration agreements.
9    (Pompliano Decl. ¶ 4)

10   Pompliano was hired by Facebook in 2014. At Facebook, where he
11   received rave performance reviews, he led the Growth & Engagement in-
12   itiatives for Facebook Pages. (Pompliano Decl. ¶ 5.)

13   In July 2015, Snap Inc. aggressively recruited Pompliano. After sev-
14   eral telephonic interviews, Snapchat flew Pompliano from his home in
15   Northern California to Los Angeles on Sunday, August 9, 2015. The next
16   day, Monday, August 10, 2015, he met with some of Snapchat's most sen-
17   ior executives at Snapchat's headquarters in Venice, California, including
18   defendants Khan and Theisen. Pompliano flew back to Northern Califor-
19   nia at the end of the day. (Pompliano Decl. ¶¶ 6–8.)

20   The next day, Tuesday, August 11, 2015, Snapchat's in-house re-
21   cruiter called Pompliano to inform him that Snapchat CEO Evan Spiegel
22   wanted him to fly back down to Los Angeles the next day to meet with
23   him. Pompliano explained that he had just flown down the day before,
24   and that flying down for full day meetings twice in one week would be
25   difficult because he would have to take an additional day off work without
26   any notice. The recruiter insisted it was urgent that he come back to meet
27   with Spiegel. Pompliano agreed to fly back to Snapchat's offices the next
28   day. (Pompliano Decl. ¶ 9.)

**Opp'n to Mot. to Compel Arbitration**

1    On Wednesday, August 12, 2015, Pompliano met with several Snap-
2    chat executives in Los Angeles, including Spiegel, Khan, and Theisen.
3    (Pompliano Decl. ¶ 10.)

4        The next morning, Thursday, August 13, 2015, Khan called Pompli-
5    ano. He wanted to know what Pompliano was earning at Facebook, and
6    what it would take to convince him to leave Facebook and join Snapchat.
7    Pompliano provided his current salary and stock options at Facebook,
8    and Khan replied that Snapchat would be in touch shortly. (Pompliano
9    Decl. ¶ 11.)

10       The following morning, on Friday, August 14, 2015, Theisen called
11   Pompliano and offered him a position at Snapchat. After some back-and-
12   forth about Pompliano's salary, they agreed on a number. (Pompliano
13   Decl. ¶ 12.)

14       Later that same day, Snapchat emailed Pompliano a formal offer let-
15   ter, along with a Confidential Information and Inventions Assignment
16   Agreement (the "Assignment Agreement") and an Arbitration Agreement
17   as attachments. (Pompliano Decl. ¶ 13; Ex. 1, 2, 3.) The offer letter states:
18   "To protect the interests of both Snapchat and its clients, all employees
19   are required to read and sign the enclosed Confidential Information and
20   Inventions Assignment Agreement as a condition of employment at
21   Snapchat." (Ex. 1 at p. 2.) It further states: "Also enclosed for you to re-
22   view and then sign as a condition of employment are the Conflict of In-
23   terest Agreement, the Acknowledgement of At-Will Employment, and our
24   Arbitration Agreement, which provides that all disputes arising out of
25   your employment must be resolved through binding arbitration." (*Id.*)

26       The Arbitration Agreement is a two-and-a-half-page document con-
27   sisting of single-space text. (Ex. 3 to Pompliano Decl.) It is apparently a
28   preprinted contract: neither Pompliano nor Snapchat are referred to by

– 6 –

**Opp'n to Mot. to Compel Arbitration**

1   name; instead, the parties are referred to exclusively as "Employee" and

2   "Company." (*See generally id.*)

3        The Arbitration Agreement contains a general provision stating that

4   all claims "relating in any manner to Employee's hiring, employment, or

5   termination of employment" will be submitted to final and binding arbi-

6   tration. (Ex. 3 to Pompliano Decl. at p 1.) However, under a section titled

7   "Covered Claims," the Arbitration Agreement specifically describes

8   claims that are subject to the agreement as those "arising under" specific

9   theories of liability, all of which apply to claims by an employee:

10        breach of contract[3], wrongful termination, negligence. defa-

11        mation, infliction of emotional distress, misrepresentation,

12        personal injury, public policy, tort, data privacy, wage and

13        hour claims, violations of Title VII of the Civil Rights Act of

14        1964, as amended, the Americans with Disabilities Act, the

15        Age Discrimination in Employment Act, the Older Workers

16        Benefit Protection Act, the Worker Adjustment and Retrain-

17        ing Notification Act, the Family and Medical Leave Act, the

18        California Fair Employment and Housing Act, the Fair Labor

19        Standards Act, the California Family Rights Act, the Califor-

20        nia Labor Code, other California wage and hour laws…

21   (*Id.*) Although that section purports that "disputes the Company may

22   have with the Employee" are within its ambit, the agreement provides no

23   examples of claims Company may have against Employee. (*Id.*)

24        The agreement also provides: "Nothing in this Arbitration Agree-

25   ment will prevent either party from seeking a preliminary injunction (or

26   

----

27   [3] As set forth below, any breach-of-contract claims brought by defendants against Pompliano relating to the Assignment Agreement would not be subject to the Arbitration Agreement. (*See infra* at pp. 8–9.)

28   

**Opp'n to Mot. to Compel Arbitration**

1   other provisional remedy) in court to preserve the status quo before the

2   arbitrator issues his/her award." (Ex. 3 to Pompliano Decl. at p. 1.)

3       The Arbitration Agreement contains a delegation clause, which pro-

4   vides that "disagreements over the arbitrability of any claim, controversy,

5   or dispute or the arbitrator's jurisdiction, including any objections to the

6   existence, scope, or validity of this Arbitration Agreement, will be re-

7   solved by the arbitrator." (Ex. 3 to Pompliano Decl. at p. 1.) However, the

8   Arbitration Agreement also provides: "If any provision of this Arbitration

9   Agreement is adjudged to be void or otherwise unenforceable, in whole or

10   in part, such adjudication will not affect the validity of the remainder of

11   the Arbitration Agreement which will remain in full force and effect." (*Id.*

12   at pp. 2–3.)

13       The Arbitration Agreement further provides that signing of the

14   agreement is "a condition of Employee's employment with the Com-

15   pany…" (Ex. 3 to Pompliano Decl. at p. 1.) The Arbitration Agreement

16   contains no provision allowing Pompliano to opt out of the delegation

17   clause or, more generally, to opt out of the obligation to arbitrate his

18   claims against Snapchat. (*See generally id.*)

19       By contrast, the Assignment Agreement gives defendants the right

20   to sue Pompliano in court. Specifically, it provides that Pompliano con-

21   sents to personal jurisdiction in state or federal court for "any lawsuit

22   filed [in court] against [him] by Company arising from or related to this

23   Agreement." (Ex. 2 to Pompliano Decl. § 7.1 [p. 3].) The claims defendants

24   may pursue against Pompliano include breach of confidentiality (*id.* § 1

25   [p. 1]), enforcement of defendants' intellectual property rights (*id.* § 2 [p.

26   1]), restrictions on Pompliano's outside employment (*id.* § 4 [p. 2]), and

27   return of company property (*id.* § 5 [p. 2]). The Assignment Agreement

28   provides that defendants may seek injunctive relief to prevent Pompliano

**Opp'n to Mot. to Compel Arbitration**

1 from breaching the Assignment Agreement. (*Id.* § 7.6 [p. 3].) The same

2 section, however, also provides that "[t]he rights and remedies provided

3 to each party in this Agreement are cumulative and in addition to any

4 other rights and remedies available to such party at law or in equity."

5 (*Id.*) Accordingly, pursuant to the Assignment Agreement, defendants

6 have a right to pursue any claims they may have against Pompliano un-

7 der the Assignment Agreement in state and federal court. Moreover, the

8 Assignment Agreement does not contain its own arbitration provision or

9 incorporate the Arbitration Agreement. (*See generally id.*; *see also id.*

10 § 7.10 [p. 3] ("This Agreement is the final, complete and exclusive agree-

11 ment of the parties with respect to the subject matter hereof and super-

12 sedes and merges all prior communications between us with respect to

13 such matters.").)

14 After sending these agreements to Pompliano, Khan and Snap Inc.'s

15 in-house recruiter told Pompliano it was very important that he sign and

16 return the documents the same day. Accordingly, he was given no mean-

17 ingful opportunity to consult with an attorney, or to negotiate the terms

18 of the agreements. He electronically signed and returned the three docu-

19 ments that day, as instructed. (Pompliano Decl. ¶¶ 14–15.)

20 Pompliano started working at Snapchat on August 31, 2015. Three

21 weeks later, on September 18, 2015, Pompliano Snapchat terminated his

22 employment because he refused to participate in Snapchat's misrepre-

23 sentations to its employees, investors, trading partners, advertisers, and

24 the media, regarding its user and engagement metrics, and his insistence

25 that Snapchat correct these metrics before becoming a public company.

26

27

28

**Opp'n to Mot. to Compel Arbitration**

1    (Compl. [Dkt #1])[4]

2    **IV. LEGAL STANDARD**

3         Under the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1–16, if an

4    arbitration clause is not itself invalid under "generally applicable con-

5    tract defenses, such as fraud, duress, or unconscionability," *AT&T Mobil-*

6    *ity LLC v. Concepcion*, 563 U.S. 333, 339 (2011) (quoting *Doctor's Assocs.,*

7    *Inc. v. Casarotto*, 517 U.S. 681, 687 (1996)) (quotation marks omitted)

8    (citing *Perry v. Thomas*, 482 U.S. 483, 492–93 n. 9 (1987)), it must be

9    enforced according to its terms, *id.* (citing *Volt Info. Scis., Inc. v. Bd. of*

10   *Trs. of Leland Stanford Junior Univ.*, 489 U.S. 468, 478 (1989)). Thus,

11   this Court's role under the FAA is "limited to determining (1) whether a

12   valid agreement to arbitrate exists and, if it does, (2) whether the agree-

13   ment encompasses the dispute at issue." *Kilgore v. KeyBank, Nat'l Ass'n*,

14   673 F.3d 947, 955 (9th Cir. 2012) (quoting *Chiron Corp. v. Ortho Diagnos-*

15   *tic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000) (quotation mark omit-

16   ted)).

17        "When evaluating a motion to compel arbitration, courts treat the

18   facts as they would when ruling on a motion for summary judgment, con-

19   struing all facts and reasonable inferences that can be drawn from those

20   _____

21   [4] Although defendants assert that Pompliano was terminated for "poor

     performance" (Mot. at p. 8), defendants offer no support for this assertion,

22   no declaration attesting to this purported reason for Pompliano's termi-

23   nation, and no substantiation of how—a mere three weeks into his em-

24   ployment with Snap Inc.—Pompliano's performance at Snapchat was de-

     termined to be anything less than stellar. The fact that there was no

25   warning, no performance improvement plan, and no justification given

26   for Pompliano's termination by itself substantiates Pompliano's claim

     that he was fired for blowing the whistle on Snapchat's dissemination of

27   false user and engagement metrics and his refusal to participate in Snap-

28   chat's fraud upon the public.

1    facts in a light most favorable to the non-moving party." *Chavez v. Bank*

2    *of Am.*, Case No. C 10–653 JCS, 2011 WL 4712204, at *3 (N.D. Cal. Oct.

3    7, 2011) (citing *Perez v. Maid Brigade, Inc.*, Case No. C 07–3473 SI, 2007

4    WL 2990368, at *3 (N.D. Cal. Oct. 11, 2007)).

5    **V.  ARGUMENT**

6        **A.    The Delegation Clause Is Unenforceable Because It Is**

7              **Ambiguous and Unconscionable**

8        Defendants argue that the "gateway" issue here, i.e., arbitrability of

9    Pompliano's claims, must be determined by the arbitrator under the Ar-

10   bitration Agreement's delegation clause. (Mot. at pp. 14–16.) That clause,

11   however, is both ambiguous and unconscionable, and thus unenforceable.

12       "[P]arties can agree to arbitrate 'gateway' questions of 'arbitrability,'

13   such as whether the parties have agreed to arbitrate or whether their

14   agreement covers a particular controversy." *Rent–A–Center*, *West, Inc. v.*

15   *Jackson*, 561 U.S. 63, 68–69 (2010). While the Court generally resolves

16   ambiguities in arbitration agreements in favor of arbitration, it resolves

17   ambiguities as to the delegation of arbitrability in favor of court adjudi-

18   cation. *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944–45 (1995);

19   *see also Momot v. Mastro*, 652 F.3d 982, 987–88 (9th Cir. 2011) ("Because

20   such issues would otherwise fall within the province of judicial review,

21   we apply a more rigorous standard in determining whether the parties

22   have agreed to arbitrate the question of arbitrability."); *see also Oracle*

23   *Am., Inc. v. Myriad Grp., A.G.*, 724 F.3d 1069, 1072 (9th Cir. 2013) ("the

24   federal policy in favor of arbitration does not extend to deciding questions

25   of arbitrability."). Accordingly, courts should presume that they deter-

26   mine arbitrability absent "clea[r] and umistakabl[e] evidence" that the

27   parties agreed to delegate that question to an arbitrator. *Howsam v. Dean*

28   *Witter Reynolds, Inc.*, 537 U.S. 79, 83 (2002); *First Options*, 514 U.S. at

939. Such clear and unmistakable evidence can include a "course of conduct demonstrating assent … or … an express agreement." *Momot*, 652 F.3d at 988.[5]

Here, defendants do not point to any evidence of a course of conduct demonstrating assent, but instead rely solely on the text of the delegation clause in the Arbitration Agreement. (Mot. at p. 15.) Although the delegation clause may be clear and unmistakable when read in isolation, in context it is both ambiguous and unconscionable.

### 1.     There Is No Clear and Unmistakable Evidence the Parties Agreed to the Delegation Clause

"Even broad arbitration clauses that expressly delegate the enforceability decision to arbitrators may not meet the clear and unmistakable test, where other language in the agreement creates an uncertainty in that regard." *Vargas v. Delivery Outsourcing, LLC*, Case No. 15–cv–03408–JST, 2016 WL 946112, at *6 (N.D. Cal. Mar. 14, 2016) (quoting *Ajamian v. CantorCO2e, L.P.*, 203 Cal. App. 4th 771, 792 (2012)). This is so because "[a]s a general matter, where one contractual provision indicates that the enforceability of an arbitration provision is to be decided

_____

[5] Relying on a case from the Federal Circuit, defendants ask the Court to apply the "wholly groundless" standard; i.e., in the event the Court determines there is not clear and unmistakable evidence the parties agreed to the delegation clause, a second inquiry is whether the assertion of arbitrability is "wholly groundless." (Mot. at p. 16 (citing *Qualcomm, Inc. v. Nokia Corp.*, 466 F.3d 1366, 1373 n.5 (Fed. Cir. 2006)).) However, "Ninth Circuit law has not explicitly required this second step, and many courts have not applied it in their analysis." *Mikhak v. University of Phoenix*, Case No. C16–00901–CRB, 2016 WL 3401763, at *3 n.1 (N.D. Cal. Jun. 21, 2016) (citations omitted). In any event, as set forth below, defendants' assertion of arbitrability is wholly groundless as the delegation clause (and the Arbitration Agreement as a whole) is ambiguous and unconscionable.

1    by the arbitrator, but another provision indicates that the court might
2    also find provisions in the contract unenforceable, there is not clear and
3    unmistakable delegation of authority to the arbitrator." *Id*. (emphasis in
4    original) (citing *Parada v. Superior Court*, 176 Cal. App. 4th 1554, 1565–
5    66 (2009)); *see also Parada*, 176 Cal. App. 4th at 1565–66 (finding no clear
6    and unmistakable delegation where the contract included a severability
7    provision applicable "[i]n the event that any provision of this Agreement
8    shall be determined by a trier of fact of competent jurisdiction to be un-
9    enforceable.").

10    The delegation clause here is ambiguous and uncertain. Although
11    the delegation clause purports to say that all questions of arbitrability
12    must be decided by an arbitrator, the Arbitration Agreement excludes
13    from its ambit any request for a "preliminary injunction (or other provi-
14    sional remedy) in court to preserve the status quo before the arbitrator
15    issues his/her award." (Ex. 3 to Pompliano Decl. at p. 1.) Furthermore,
16    the Arbitration Agreement provides for the possibility that "provision[s]
17    of this Arbitration Agreement [may be] *adjudged* to be void or otherwise
18    unenforceable, in whole or in part…" (*Id*. at p. 2 [emphasis added].) The
19    right to seek an injunction in court, and the fact that the Arbitration
20    Agreement may be adjudged to be void or enforceable, implies that a
21    court may determine arbitrability. That implication, however, contradicts
22    the broad delegation clause purporting to reserve that decision to an ar-
23    bitrator.[6]

24

---

25    [6] It is anticipated that defendants will argue that the provision allowing
26    the parties to seek a preliminary injunction in court refers solely to en-
      forcement of the Arbitration Agreement. But that provision is not limited
27    by its terms to requests for injunctive relief relating to the Arbitration
28    Agreement. (Ex. 3 at p. 1.)

**Opp'n to Mot. to Compel Arbitration**

1      Moreover, the Assignment Agreement is in conflict with the delega-
2  tion clause of the Arbitration Agreement because the Assignment Agree-
3  ment gives Snap Inc. the right to pursue any claims "arising from or re-
4  lated to [the Assignment Agreement]" in court. (Ex. 2 to Pompliano Decl.
5  § 7.1 (p. 3); *see also id.* § 7.10 [p. 3] (Assignment Agreement is "the final,
6  complete and exclusive agreement of the parties with respect to the sub-
7  ject matter hereof…").).)[7] This provision is inconsistent with the provision
8  in the Arbitration Agreement that "disagreements over the arbitrability
9  of any claim, controversy, or dispute or the arbitrator's jurisdiction, in-
10  cluding any objections to the existence, scope, or validity of this Arbitra-
11  tion Agreement, will be resolved by the arbitrator" (Ex. 3 to Pompliano
12  Decl. at p. 1) because it reserves to the courts the issue of arbitrability
13  with respect to certain claims rather than delegating determination of
14  arbitrability of those claims to an arbitrator.

15      Accordingly, when read in conjunction with the Assignment Agree-
16  ment, the delegation clause of the Arbitration Agreement is ambiguous
17  as to whether the parties intended to have an arbitrator decide the arbi-
18  trability of: (a) all claims; (b) all claims, save those for injunctive relief;
19  (c) all claims, save those for injunctive relief regarding arbitration; (d)
20  only Pompliano's claims; (e) only Pompliano's claims, save those for in-
21  junctive relief; or (f) only Pompliano's claims, save those for injunctive
22  relief relating to enforcement of the Arbitration Agreement. Thus, the

23  ———————————————

24  [7] All three documents signed Pompliano as a condition of employment on
25  August 14, 2015, should be read together as a single agreement. *See In*
     *re Lumbermans Mortg. Co.*, 712 F.2d 1334, 1336 (9th Cir. 1983) (finding
26  that three related agreements entered into on the same date must be read
27  as one agreement; "Several contracts relating to the same matters, be-
     tween the same parties, and made as parts of substantially one transac-
28  tion, are to be taken together.") (quoting Cal. Civ. Code § 1642).

**Opp'n to Mot. to Compel Arbitration**

1   delegation clause is uncertain and there is no clear and unmistakable
2   evidence that the parties agreed to delegate the issue of arbitrability to
3   an arbitrator.

4       **2.**    **The Delegation Clause Is Unenforceable Because**
5       **It Is Unconscionable**

6       "Under California law, a contractual provision is unenforceable if it
7   is both procedurally and substantively unconscionable." *Kilgore*, 718 F.3d
8   at 1058 (citing *Armendariz Found. Health Psychcare Servs., Inc.*, 24
9   Cal.4th 83, 114 (2000)). "[T]he more substantively oppressive the contract
10  term, the less evidence of procedural unconscionability is required to
11  come to the conclusion that the term is unenforceable, and vice versa."
12  *Armendariz*, 24 Cal. 4th at 114.

13      **a.**    **The Delegation Clause Is Procedurally**
14      **Unconscionable**

15      "Procedural unconscionability exists where a contract imposes 'op-
16  pression or surprise due to unequal bargaining power.'" *Free Range Con-*
17  *tend, Inc. v. Google Inc.*, Case No. 14–cv–02329–BLF, 2016 WL 2902332,
18  at *7 (N.D. Cal. May 13, 2016) (quoting *Armendariz*, 24 Cal. 4th at 114).
19  In general, under California law, it is "procedurally unconscionable to re-
20  quire employees, as a condition of employment, to waive their right to
21  seek redress of grievance in a judicial forum." *Ingle v. Circuit City Stores,*
22  *Inc.*, 328 F.3d 1165, 1170 (9th Cir. 2003); *see, e.g.*, *Armendariz*, 24 Cal.4th
23  at 114-15 (explaining an arbitration agreement was procedurally uncon-
24  scionable because it was imposed on employees as a condition of employ-
25  ment, and there was no opportunity for them to negotiate); *see also Aral*
26  *v. Earthlink, Inc.*, 134 Cal. App. 4th 544, 557 (2005) (an arbitration clause
27  on a "take it or leave it" basis demonstrates "quintessential procedural
28  unconscionability"); *Flores v. Transamerica HomeFirst, Inc.*, 93 Cal. App.

– 15 –

1   4th 846, 853 (2001) ("A finding of a contract of adhesion is essentially a

2   finding of procedural unconscionability").

3        Here, the Arbitration Agreement is a quintessential contract of ad-

4   hesion. The agreement was "being signed as a condition of Employee's

5   employment with the Company and as a separate agreement between the

6   Company…" (Ex. 3 to Pompliano Decl. at p. 1). (*See also* Ex. 1 to Pompli-

7   ano Decl. at p. 2 (stating that Pompliano was required to sign the Arbi-

8   tration Agreement and Assignment Agreement as a "condition of employ-

9   ment").) Furthermore, Snap Inc.'s in-house recruiter and its Chief Strat-

10  egy Officer told Pompliano that he needed to sign the Arbitration Agree-

11  ment as a condition of his employment—on the same day he received it.

12  (Pompliano Decl. ¶ 14.) Pompliano was given no meaningful opportunity

13  to consult with an attorney or negotiate the terms of the agreements. (*Id.*

14  ¶ 16.) Accordingly, the delegation clause is procedurally unconscionable.

15  *See also Vargas*, 2016 WL 946112, at *9 (finding a delegation clause pro-

16  cedurally unconscionable in part because it was a preprinted, standard-

17  ized contract, drafted entirely by the employer, and the employee had lit-

18  tle opportunity or power to review or negotiate the contract).

19       Defendants may argue that Pompliano, who had started several

20  small businesses while in college and shortly thereafter, was a sophisti-

21  cated party who should have understood the legal intricacies of the dele-

22  gation clause. However, Pompliano is not a lawyer. He holds no profes-

23  sional licenses or advanced degrees. He had no experience negotiating

24  written employment or arbitration agreements. And he had no under-

25  standing that he was signing away his right to have a court determine

26  the issue of arbitrability, or the implications of delegating that decision

27  to an arbitrator (nor would it be reasonable for him to have such an un-

28  derstanding as a lay person). (Pompliano Decl. ¶¶ 3, 4, 16.) *See Attia v.*

1  *Neiman Marcus Group, Inc.*, Case No. SACV 16–0504–DOC, 2016 WL
2  8902584, at *6 (C.D. Cal. Jun. 27, 2016) (finding that a delegation clause
3  was procedurally unconscionable, in part, because it was presented on a
4  take-it-or-leave-it basis, and because "'the issue of delegating arbitrabil-
5  ity questions to an arbitrator is a rather arcane issue upon which parties
6  likely do not focus.'") (quoting *Pinela v. Neiman Marcus Group, Inc.*, 238
7  Cal. App. 4th 227, 243 (2015)); *Mikhak v. University of Phoenix*, Case No.
8  C16–00901–CRB, 2016 WL 3401763, at *5 (N.D. Cal. Jun. 21, 2016) (find-
9  ing that the plaintiff, a former researcher and professor of Biostatistics
10  and Genetic and Molecular Epidemiology was not sufficiently "sophisti-
11  cated" to comprehend the legal intricacies of a delegation clause and re-
12  serving for the court the determination of whether the plaintiff's claims
13  were arbitrable). Moreover, Pompliano's purported sophistication alone
14  would not be enough to negate a showing of procedural unconscionability.
15  *See Nagrampa v., MailCoups, Inc.*, 469 F.3d 1257, 1283 (9th Cir. 2006)
16  (*en banc*) ("[T]he sophistication of a party, alone, cannot defeat a proce-
17  dural unconscionability claim."). Accordingly, the delegation clause is
18  procedurally unconscionable.

19          **b.    The Delegation Clause Is Substantively**
20                 **Unconscionable**

21          "Substantive unconscionability addresses the fairness of the term in
22  dispute." *Pokorny v. Quixtar, Inc.*, 601 F.3d 987, 997 (9th Cir. 2010) (quot-
23  ing *Szetela v. Discover Bank*, 97 Cal. App. 4th 1094, 1100 (2002)) (internal
24  quotation marks omitted). It arises when an agreement "imposes unduly
25  harsh, oppressive, or one-sided terms," *Ajamian*, 203 Cal. App. 4th at
26  797, or "reallocates risks in an objectively unreasonable or unexpected
27  manner." *Morris v. Redwood Empire Bancorp*, 128 Cal. App. 4th 1305,
28  1317 (2005) (quoting *Jones v. Wells Fargo Bank*, 112 Cal. App. 4th 1527,

1   1539 (2003)) (internal quotation mark omitted). The paramount consid-

2   eration in assessing substantive unconscionability is mutuality. *Pokorny*,

3   601 F.3d at 997 (quoting *Abramson v. Juniper Networks, Inc.*, 115 Cal.

4   App. 4th 638, 657 (2004)) (internal quotation marks omitted). Agree-

5   ments to arbitrate will be substantively unconscionable if they do not

6   contain at least "a modicum of bilaterality." *Id.* at 998. (quoting *Abram-*

7   *son*, 115 Cal. App. 4th at 657) (internal quotation marks omitted).

8        In addition, a provision in an adhesion contract that does not fall

9   within the reasonable expectations of the weaker or "adhering" party is

10  substantively unconscionable and will not be enforced against him.

11  *Thompson v. Toll Dublin, LLC*, 165 Cal. App. 4th 1360, 1372–73 (2008)

12  (citing *Armendariz*, 24 Cal.4th at 113); *see also Parada*, 176 Cal. App. 4th

13  at 1573 ("Substantive unconscionability may be shown if the disputed

14  contract provision falls outside the nondrafting party's reasonable expec-

15  tations.") (citing *Gutierrez v. Autowest, Inc.*, 114 Cal. App. 4th 77, 88

16  (2002)).

17       Given the delegation clause's high degree of procedural unconscion-

18  ability, Pompliano is only required to make a minimal showing of its sub-

19  stantive unconscionability to render it unenforceable. *Lima v. Gateway,*

20  *Inc.*, 886 F. Supp. 2d 1170, 1183 (C.D. Cal. Aug. 7, 2012) (Gee, J.) (citing

21  *Mercuro v. Superior Court*, 96 Cal. App. 4th 167, 175 (2002)).

22       Here, the delegation clause is substantively unconscionable because

23  it purports to delegate the issue of arbitrability to the arbitrator with

24  respect to Pompliano's claims against defendants, but allows arbitrability

25  of defendants' claims against Pompliano to be determined by the courts.

26  The arbitrability of all of Pompliano's claims, including a specific litany

27  of claims typically brought by an employee against an employer, is to be

28  decided by an arbitrator. (Ex. 3 to Pompliano Decl. at p. 1.) By contrast,

arbitrability of defendants' claims against Pompliano relating to the Assignment Agreement (which include typical claims by an employer, including theft of trade secrets, breach of confidentiality, and infringement of Snap Inc.'s intellectual property rights) is exempt from the delegation clause of the Arbitration Agreement. (Ex. 2 to Pompliano Decl. § 7.1 [p. 3].) This disparity is harsh, oppressive, and one-sided in of a multi-billion-dollar company and its officers against an individual employee, and beyond the reasonable expectations of an employee (Pompliano Decl. ¶ 16), making the delegation clause substantively unconscionable.

Defendants' reliance on *Momot v. Mastro*, 652 F.3d 982 (9th Cir. 2011), and *Mohamed v. Uber Technologies, Inc.*, 848 F.3d 1201 (9th Cir. 2016), is misplaced. There was no argument by the plaintiff in *Momot* that the delegation clause in that case was unenforceable. 652 F.3d at 986–88. The *Mohamed* case did involve an argument by the plaintiffs that the delegation clauses of the relevant arbitration agreements were unenforceable. But there, the delegation clauses included provisions that allowed the plaintiffs to opt out of the arbitration agreements within 30 days of signing. 848 F.3d at 1211. Here, the Arbitration Agreement contains no opt-out provision. (*See generally* Ex. 3 to Pompliano Decl.) Accordingly, the delegation clause is harsh, oppressive, and one-sided in defendants' favor, and therefore substantively unconscionable.

## B. The Arbitration Agreement as a Whole Is Unenforceable Because It Is Unconscionable

### 1. The Arbitration Agreement as a Whole Is Procedurally Unconscionable

As set forth above, the relative sophistication of the parties, the fact that the Arbitration Agreement was an agreement of adhesion and a condition of Pompliano's employment, and the limited time (less than one

day) that Pompliano was given to review the agreement, precluding the possibility of negotiation or the opportunity to consult with an attorney (Pompliano Decl. ¶¶ 14–16), renders the delegation clause procedurally unconscionable. For the same reasons, the Arbitration Agreement as a whole is also procedurally unconscionable.

### 2. The Arbitration Agreement as a Whole Is Substantively Unconscionable

In conjunction with the Assignment Agreement, the Arbitration Agreement limits Pompliano to arbitration for virtually every conceivable claim an employee might bring against an employee. (Ex. 3 to Pompliano Decl. at p. 1.) None of the claims specifically-enumerated in the Arbitration Agreement would ordinarily be brought by an employer against an employee. On the other hand, virtually every claim that an employer typically brings against an employee (for example, theft of trade secrets, breach of confidentiality, and those relating to Snap Inc.'s intellectual property rights) are not only omitted from the claims listed in the Arbitration Agreement, the Assignment Agreement affirmatively allows defendants to pursue those claims in state or federal court against Pompliano. (Ex. 2 to Pompliano Decl. § 7.1 [p. 3]; *see also id.* §§ 1 ("Confidential Information Protections"), 1.1 ("Nondisclosure; Recognition of Company's Rights"), 1.2 ("Confidential Information") 2 ("Inventions"), 4 (restricting outside employment), 5 ("Return of Company Property").) Because the parties' agreement requires Pompliano to arbitrate all of his claims against defendants but allows defendants access to the courts for their claims against Pompliano, the Arbitration Agreement is substantively unconscionable. *See Nagrampa*, 469 F.3d at 1285 ("Where the party with stronger bargaining power has restricted the weaker party to the arbitral forum, but reserved for itself the ability to seek redress in either

1   an arbitral or judicial forum, California courts have found a lack of mu-
2   tuality supporting substantive unconscionability."); *Armendariz*, 24
3   Cal.4th at 119 ("an agreement requiring arbitration only for the claims of
4   the weaker party but a choice of forums for the claims of the stronger
5   party" is substantively unconscionable).

6   **C.    Pompliano's Claim for Violation of California Labor**
7   **        Code § 1050 Is Not Subject to Arbitration**

8   Even if the Court were to find that the Arbitration Agreement is en-
9   forceable, by its terms the agreement permits Pompliano to seek "a pre-
10  liminary injunction (or other provisional remedy) in court to preserve the
11  status quo before the arbitrator issues his/her award." (Ex. 3 to Pompli-
12  ano Decl. at p. 1.) Accordingly, Pompliano's ninth cause of action, which
13  includes a request for a preliminary injunction ordering defendants to
14  "refrain[] from making any misrepresentations to any third party con-
15  cerning the facts or circumstances surrounding plaintiff's termination
16  from Snapchat" (Compl. [Dkt #1] Prayer ¶ a) is not subject to arbitration.
17  Defendants concede this argument by not disputing that Pompliano's
18  Section 1050 claim is subject to the Arbitration Agreement.[8]

19
20
21
22

23  [8] Pompliano nevertheless reserves the right to seek leave to file a sur-
24  reply should defendants belatedly address the Section 1050 claim. *See*
        *Daghlian v. DeVry Univ., Inc.*, 461 F. Supp. 2d 1121, 1143 n.37 (C.D. Cal.
25  2006) (noting that it is improper for a party to submit new facts or differ-
26  ent legal arguments on reply, that a court has discretion to decline to
        consider new arguments made on reply, but if new arguments on reply
27  are considered, then the opposing party must have an opportunity to re-
28  spond).

**Opp'n to Mot. to Compel Arbitration**

1
2

**D.     Pompliano's Whistleblower Claims and Related Claims Are Not Subject to Arbitration**

3   Pompliano's first cause of action for violation of the Dodd–Frank
4   whistleblower statute and second cause of action for violation of Califor-
5   nia's whistleblower statute are not subject to the Arbitration Agreement
6   because those claims arise under the Sarbanes–Oxley Act ("SOX"). (*See*
7   Compl. [Dkt #1] ¶¶ 97, 100, 102, 103, 105, 112 [specifically referring to
8   SOX].) SOX provides that "[n]o predispute arbitration agreement shall
9   be valid or enforceable, if the agreement requires arbitration of a dispute
10  arising under this section." 18 U.S.C. § 1514A(e)(2). Accordingly, the Ar-
11  bitration Agreement is unenforceable with respect to these claims.

12  The court in *Wiggins v. ING U.S., Inc.*, Case No. 3:14–CV–1089,
13  2015 WL 3771646, at *7 (D. Conn. Jun. 17, 2015), reached the same re-
14  sult. There, the court denied defendant's motion to compel arbitration of
15  plaintiff's Dodd–Frank claim, reasoning that where Dodd–Frank viola-
16  tions are based on violations of substantive prohibitions found in SOX,
17  the anti-arbitration provision in 18 U.S.C. § 1514A applies to the Dodd–
18  Frank claims. Specifically, the court reasoned that plaintiff's Dodd–
19  Frank claim, "although enabled by § 78u-6(h)(1)(B)(i) (the provision cre-
20  ating the cause of action) and § 78u-6(h)(1)(A)(iii) (the provision referring
21  to the prohibited conduct), also 'aris[es] under' § 1514A (the section that
22  actually defines the prohibited conduct)." *Id.*

23  The court explained that three cases reaching the opposite result,
24  (*Khazin v. TD Ameritrade Holding Corp.*, 773 F.3d 488, 492–93 (3rd Cir.
25  2014); *Ruhe v. Masimo Corp.*, Case No. SACV 11–00734–CJC, 2011 WL
26  4442790, at *4 (C.D. Cal. Sep. 16, 2011); *Murray v. UBS Sec., LLC*, Case
27  No. 12 Civ. 5914, 2014 WL 285093, at *10–11 (S.D.N.Y. Jan. 27, 2014),
28  the same cases upon which defendants rely (Mot. at p. 14)) "oversimplify"

– 22 –

1   relevant case law. *Wiggins*, 2015 WL 3771646 at *6. Those cases reason
2   that a "cause of action" only "arises under" the statute that creates it, and
3   that since Section 78u-6 creates the Dodd–Frank claim, the Dodd–Frank
4   claim does not "aris[e] under" Section 1514A. Accordingly, these cases
5   conclude that § 1514A(e)(2) is inapplicable to whistleblower claims
6   brought under Dodd–Frank. This reasoning ignores Supreme Court prec-
7   edent, which provides that "a cause of action not only 'arises under' the
8   provision literally explicitly stating that a private right of action exists
9   … but also under any law that 'provides a necessary element of the plain-
10  tiff's claim for relief.'" *Wiggins*, 2015 WL 3771646 at *6 (quoting, *Jones v.*
11  *R.R. Donnelly & Sons, Co.*, 541 U.S. 369, 376 (2004)). As the Supreme
12  Court noted, "[n]othing in our case law supports an interpretation [of
13  'arising under'] … under which [the phrase] means something akin to
14  'based solely upon.'" *Id.* (quoting, *Jones*, 541 U.S. at 383.).

15      Moreover, all claims that are factually intertwined with the whis-
16  tleblower claims (i.e., all causes of action), should be heard in court. In
17  *Stewart v. Doral Financial Corp.*, 997 F.Supp.2d. 129 (D. Puerto Rico
18  2014), the court concluded that a mandatory arbitration agreement was
19  invalid and unenforceable as to plaintiff's breach of contract claims where
20  the claims were "entangled with" and "arose from the same nucleus of
21  operative facts" as a claim arising under SOX. *Id.* at 139. The court rea-
22  soned that compelling arbitration would require both sides to relitigate
23  the application of SOX's whistleblower provision in order to determine
24  whether defendant did, in fact, breach its contractual obligations and
25  that this "would not only frustrate the purpose of 18 U.S.C. § 1514A(e)(2)
26  but would also place a substantial financial and temporal burden on all
27  parties involved." *Id.* at 139–40. Here, too, compelling arbitration of any
28  of Pompliano's claims, which are all intertwined factually (as defendants

1    concede [Mot. at pp. 10–11, 13 n.2]), would frustrate the purpose of 18

2    U.S.C. § 1514A(e)(2) and place undue burdens on the parties.

3        Defendants argue that Pompliano's second cause of action for vio-

4    lation of California Labor Code § 1102.5 should be subject to arbitration

5    because courts purportedly "have routinely granted arbitration of Labor

6    Code Section 1102.5 claims…" (Mot. at p. 14.) However, those cases are

7    distinguishable. Unlike here, the plaintiff in *Elmore v. CVS Pharmacy,*

8    *Inc.*, Case. No. 2:16–cv–05603, 2016 WL 6635625 (C.D. Cal. Nov. 9, 2016),

9    did not argue that the delegation clause was unenforceable. The court in

10   *Jacovides v. Future Foam, Inc.*, Case No. 2:16–cv–01842, 2016 U.S. Dist.

11   LEXIS 57530 (C.D. Cal. Apr. 25, 2016), found that the arbitration agree-

12   ment at issue was mutual. Similarly, in *Totten v. Kellogg Brown & Root,*

13   *LLC*, 152 F. Supp. 3d 1243 (C.D. Cal. 2016) (Gee, J.), the Court found

14   that the arbitration agreement was procedurally unconscionable, but the

15   agreement was not substantively unconscionable because, unlike here,

16   the requirement to arbitrate was mutual. *Id.* at 1252. Furthermore, the

17   issue of whether the § 1102.5 arose under SOX was not raised. *See gen-*

18   *erally id.* Accordingly, defendants' authorities are inapposite.

### E.    Equitable Estoppel Does Not Apply Here

20       Defendants argue that Pompliano is equitably estopped from con-

21   testing the arbitrability of his claims because he purportedly received

22   "the benefits of [the Arbitration Agreement] while simultaneously at-

23   tempting to avoid the burdens that contract imposes." (Mot. at p. 12

24   [quoting *Alliance Bank of Ariz. V. Patel*, Case No. CV 13–736, 2013 WL

25   2432313 (C.D. Cal. Jun. 3, 2013)].) However, *Patel* merely stands for the

26   proposition that a plaintiff who asserts claims under a contract is bound

27   by a valid and enforceable arbitration provision in the same agreement.

28   Unlike here, enforceability of the arbitration agreement was not at issue

1   in *Patel*. 2013 WL 2432313, at *3. Moreover, defendants cite no authority
2   (and Pompliano is not aware of any) holding that a party is equitably
3   estopped from pursuing claims in court after asserting those claims in
4   arbitration, especially where, as here, there has been no discovery or sub-
5   stantive proceedings in arbitration. (Sergenian Decl. ¶¶ 4, 5, 9; Ex. B, C,
6   H, I.)[9] In addition, three of the claims in this action (the first, second, and
7   ninth causes of action) were never asserted in arbitration. Equitable es-
8   toppel, therefore, has no application here.

9   **VI. CONCLUSION**

10      For the foregoing reasons, plaintiff Anthony Pompliano respectfully
11   requests that the Court deny defendants' motion to compel arbitration.

12

13   Dated: June 23, 2017              Respectfully submitted,
14                                     **Pierce Sergenian LLP**

15                                     By:   */s/David A. Sergenian*
16                                     David A. Sergenian
                                       Attorneys for plaintiff
17

18

19

20

21

22

23

24   _____

25   [9] As stated above, Pompliano voluntarily dismissed the state court action
     after filing this action. (Sergenian Decl. ¶ 12; Ex. J.) However, there does
26   not appear to be a similar mechanism in arbitration that would allow
     Pompliano to dismiss the arbitration without prejudice. Accordingly,
27   Pompliano is maintaining the arbitration solely as a prophylactic meas-
28   ure in the event the Court compels arbitration.