**STAYED**

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

ANTHONY POMPLIANO,

                         Plaintiff,

        v.

SNAP INC., d/b/a SNAPCHAT, et al.,

                       Defendants.

Case No.: CV 17-3664-DMG (JPRx)

**ORDER RE DEFENDANTS' MOTION TO COMPEL ARBITRATION AND TO DISMISS OR, IN THE ALTERNATIVE, STAY ACTION [24] [25]**

This matter is before the Court on a  Motion to Compel Arbitration ("Motion") filed by Defendants Snap, Inc., Evan Spiegel, Brian Theisen, and Irman Khan (collectively, "Snapchat" or "Defendants").  [Docs. ## 24, 25].  The Court has deemed the matter appropriate for decision without oral argument.  Fed. R. Civ. P. 78(b); C.D. Cal. L.R. 7-15.  Having duly considered the parties' arguments and evidence presented in their written submissions, the Court **GRANTS** Defendants' Motion.

# I.

## FACTUAL BACKGROUND

This case relates to a dispute between Plaintiff Anthony Pompliano and Snapchat. Before being hired by Snapchat, Pompliano led the Growth and Engagement initiatives for Facebook Pages.  Declaration of Anthony Pompliano ("Pompliano Decl.") [Doc. # 26-1] ¶ 5.  In July 2015, Defendants began recruiting Pompliano to join Snapchat.  *Id.* ¶ 6.  During its interview process, Snapchat flew Pompliano from his home in Northern California to Los Angeles multiple times and introduced him to top executives at the company.  *Id.* ¶¶ 6-10.  On August 14, 2015, Theisen offered Pompliano a position at Snapchat, an annual salary of $225,000, and $3.5 million in Snapchat stock options.  *Id.* ¶ 12.  Later that day, Pompliano countered with a salary of $250,000.  *Id.*  Snapchat made a final offer of $240,000, and the parties agreed on that number.  *Id.*

That same day, a Snapchat employee emailed Pompliano a formal offer letter for the position of Growth Lead, a Confidential Information and Inventions Assignment Agreement, and an Arbitration Agreement ("Agreement").  *Id.* ¶ 13.  Snapchat told Pompliano that it was very important that he immediately sign and return the documents.  *Id.* ¶ 14.  Pompliano signed and returned the employment documents that day.  *Id.* Pompliano did not consult with a lawyer before signing these documents.  *Id.*

Pompliano worked for Snapchat for three tension-filled weeks.  He alleges that Snapchat executives falsely represented key performance metrics to advertisers, the media, public, and investors to inflate Snapchat's valuation before its initial public offering ("IPO").  Complaint ("Compl.") [Doc. # 1] ¶ 4.  According to Pompliano, Snapchat fired him because he refused to ignore the problems with Snapchat's key metrics.  *Id.* ¶ 5.  Snapchat's executives allegedly sought to fire Pompliano because they allegedly were worried that he would jeopardize their IPO.  *Id.* ¶ 79.  On September 18, 2015, Snapchat fired Pompliano—only three weeks into his tenure.  *Id.* ¶ 87.

## II.

## PROCEDURAL BACKGROUND

On July 27, 2016, Pompliano demanded arbitration with Snapchat.  This arbitration demand included claims for: (1) wrongful termination, (2) fraudulent inducement of employment contract, (3) breach of contract, (4) breach of the covenant of good faith and fair dealing, (5) intentional infliction of emotional distress, and (6) violation of the California Labor Code.  Declaration of Baldwin Lee ("Lee Decl.") [Doc. # 25-1] ¶ 2. Over the next few months, the parties participated in an arbitrator selection process, which led to the selection of the Honorable Rex Hesseman (Ret.) as arbitrator.  *Id.* ¶ 3. On October 25, 2016, the parties participated in a case management conference with Arbitrator Hesseman and agreed to a litigation schedule and a hearing date of September 11-15, 2017.  *Id.*  Around this time, Pompliano served Snapchat with written discovery requests.  *Id.*

Pompliano's arbitration agreement with Snapchat reads in relevant part:

> Employee and Snapchat, Inc. (the Company) agree that, to the fullest extent permitted by law, any and all claims, controversies, or disputes between Employee and the Company . . . relating in any manner to Employee's hiring, employment, or termination of employment, whether voluntary or involuntary, will be submitted to final and binding arbitration (Arbitrable Claims) as the exclusive remedy for such claims, controversies, or disputes (Arbitration Agreement).  For clarity, disagreements over the arbitrability of any claim, controversy, or dispute or the arbitrator's jurisdiction, including any objections to the existence, scope, or validity of this Arbitration Agreement, will be resolved by the arbitrator.

1  Compl., Ex. C.

2      On January 4, 2017, Pompliano filed a civil complaint in Los Angeles Superior

3  Court alleging a single claim against Snapchat for violating Labor Code § 1050.  Lee

4  Decl. ¶ 4.  Pompliano did not amend his arbitration demand to add this Labor Code

5  § 1050 claim.  *Id.* ¶ 5.  Two weeks after Pompliano filed the civil complaint in state court,

6  Snapchat filed a petition to compel arbitration of Pompliano's Labor Code § 1050 claim.

7  *Id.* ¶ 6.  Snapchat's petition was scheduled to be heard by the state court on September

8  22, 2017.  *Id.*

9      In May 2017, Pompliano filed this case, which includes allegations of violations of

10 the Dodd-Frank Whistleblower Statute and California Whistleblower's Statute.  Compl.

11 ¶¶ 96-115.  A week after filing this case, Pompliano voluntarily dismissed his state court

12 action.  Lee Decl. ¶ 8.  On June 13, 2017, Snapchat moved to compel arbitration in this

13 case.  *See generally* Mot.  The Motion has been fully briefed.  [Doc. ## 26, 31].

## III.

## LEGAL STANDARD

16     The Federal Arbitration Act ("FAA") provides that written provisions to arbitrate

17 disputes are "valid, irrevocable, and enforceable, save upon such grounds as exist at law

18 or in equity for the revocation of any contract."  9 U.S.C. § 2; *see also AT&T Mobility*

19 *LLC v. Concepcion*, 563 U.S. 333, 336 (2011).  This provision reflects "both a 'liberal

20 federal policy favoring arbitration' and the 'fundamental principle that arbitration is a

21 matter of contract.'"  *Concepcion*, 563 U.S. at 339 (citation omitted) (quoting *Rent-A-*

22 *Center, W., Inc. v. Jackson*, 561 U.S. 63, at 67 (2010)).  This Court's role is limited to

23 determining "(1) whether a valid agreement to arbitrate exists and, if it does, (2) whether

24 the agreement encompasses the dispute at issue."  *Kilgore v. KeyBank, Nat'l Ass'n*, 718

25 F.3d 1052, 1058 (9th Cir. 2013) (*en banc*) (citation omitted).  "Upon being satisfied that

26 the issue involved in such suit or proceeding is referable to arbitration under . . . an

27 agreement," the court "shall on application of one of the parties stay the trial of the action

28

until such arbitration has been had in accordance with the terms of the agreement . . . ."  9 U.S.C. § 3.

"When deciding whether the parties agreed to arbitrate a certain matter . . . courts generally . . . should apply ordinary state-law principles that govern the formation of contracts."  *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944 (1995). Arbitration provisions may be nullified, however, by "generally applicable contract defenses, such as fraud, duress, or unconscionability." *Concepcion*, 563 U.S. at 339 (quoting 9 U.S.C. § 2).

## IV.

## DISCUSSION

The Court will first address whether the parties' dispute is within the scope of the Agreement.  Thereafter, the Court will consider the enforceability of the Agreement.

**A.   The Agreement Covers the Dispute Between Pompliano and Snapchat**

The Agreement requires "any and all claims, controversies, or disputes . . . relating in any manner to [Pompliano's] hiring, employment, or termination of employment" to be resolved through arbitration.  Compl., Ex. C.  The parties' dispute—which focuses on the events surrounding Pompliano's hiring and his three week tenure at Snapchat—plainly falls within the scope of the Agreement.   Indeed, courts in this district have routinely held that language similar to the Agreement's language requires arbitration. *See, e.g.*, *Quevedo v. Macy's Inc.*, 798 F. Supp. 2d 1122, 1127, 1143 (C.D. Cal. 2011).

**B.   The Delegation Clause of the Agreement Is Not Ambiguous or Unconscionable**

Although Pompliano does not contest that his dispute with Snapchat falls within the scope of the Agreement, he argues that the Agreement is unenforceable.  First, Pompliano argues that the Agreement's "gateway" provision—which allows the arbitrator to determine the arbitrability of the Agreement—is ambiguous and unenforceable.  Opp'n at 11.

"[P]arties can agree to arbitrate 'gateway' questions of 'arbitrability,' such as whether the parties have agreed to arbitrate or whether their agreement covers a particular controversy." *Rent-A-Center*, 561 U.S. at 68-69.  Although there is a presumption in

favor of arbitrating issue, this presumption does not extend to deciding whether an agreement is arbitrable in the first instance. *Oracle Am., Inc. V. Myriad Grp., A.G.*, 724 F.3d 1069, 1072 (9th Cir. 2013). There are two prerequisites for a delegation clause to be effective: (1) the language must be clear and unmistakable and (2) the delegation must not be revocable under state contract such as for fraud, duress, or unconscionability. *Tiri v. Lucky Chances, Inc.*, 226 Cal. App. 4th 231, 242 (2014).

### 1. The "Gateway" Provision of the Agreement Is Not Ambiguous

The delegation clause of the Agreement states: "For clarity, disagreements over the arbitrability of any claim, controversy, or dispute or the arbitrator's jurisdiction . . . *will be resolved by the arbitrator*." Compl., Ex. C (emphasis added). This "gateway" provision is clear. The Agreement requires disputes about the arbitrability of any claim to be resolved by the arbitrator—not this Court. *Mohamed v. Uber Techs., Inc.*, 848 F.3d 1201 (9th Cir. 2016), supports this conclusion. In that case, the Ninth Circuit interpreted an arbitration provision that "is intended to apply to the resolution of disputes that otherwise would be resolved in a court of law or before a forum other than arbitration" and "requires all such disputes to be resolved only by an arbitrator through final and binding arbitration and not by way of court or jury trial." *Id.* at 1207-08. The court concluded that the arbitration provision in *Mohamed* "clearly and unmistakably delegated the question of arbitrability to the arbitrator."[1]   *Id.* at 1208.   As in *Mohamed*, the Agreement in this case clearly and unmistakably requires the arbitrator to decide questions of arbitrability.

Pompliano contends that the provision is ambiguous for three reasons. First, he points out that the Agreement allows the parties to go to court to seek a provisional remedy, like a preliminary injunction. Opp'n at 13. Second, the Agreement allows the possibility that provisions of the Agreement may be "*adjudged* to be void or otherwise

---

[1] The court in *Mohamed* also held that issues relating to the arbitrability of class action, collective action, and representative claims were not required to be decided by an arbitrator because those claims were specifically excluded from the arbitration provision. *Mohamed*, 848 F.3d at 1208.

unenforceable," implying that the Court may determine issues relating to arbitrability. *Id.* (citing Pompliano Decl., Ex. 3 p. 2).   Third, Pompliano argues that the *Assignment Agreement* conflicts with the Agreement because the former allows Snapchat to pursue claims relating to the Agreement in court.   Opp'n at 14 (citing Pompliano Decl., Ex. 2, § 7.1).

There is no ambiguity in the "gateway" provision.   First, the Agreement allows either side to seek preliminary relief to preserve the status quo pending arbitration. California Code of Civil Procedure 1281.8(b) allows a party to seek a provisional remedy in connection with an arbitrable controversy.   The Agreement's "gateway" provision is not ambiguous merely because it restates California substantive law.   Second, the term "adjudge" does not create ambiguity.   An arbitrator is also capable of adjudging a dispute. *See* Adjudge, Black's Law Dictionary (10th ed. 2014) ("To deem or pronounce to be.").   Third, the Court reads the Assignment Agreement to merely address where venue would be proper if a lawsuit arose.[2]   As the Ninth Circuit noted in *Mohamed*, "no matter how broad the arbitration clause, it may be necessary to file an action in court to enforce an arbitration agreement, or to obtain a judgment enforcing an arbitration award, and the parties may need to invoke the jurisdiction of a court to obtain other remedies." *Mohamed*, 848 F.3d at 1209 (brackets omitted) (citing *Dream Theater, Inc. v. Dream Theater*, 124 Cal. App. 4th 547 (2004), *as modified on denial of reh'g* (Dec. 28, 2004)). The Assignment Agreement confirms where a suit should be filed in case a judicial remedy, such as a preliminary injunction, is needed.   The Assignment Agreement is not lacking in mutuality such that it would allow Snapchat to sue in court while restricting Pompliano to seeking recourse through arbitration.

---

[2] The relevant provision of the Assignment Agreement reads:   "I expressly consent to personal jurisdiction and venue in the state and federal courts for the county in which Company's principal place of business is located for any lawsuit filed there against me by Company arising from or related to this Agreement."   Pompliano Decl., Ex. 2 § 7.1.

## 2.  The Arbitration Agreement Is Not Unconscionable

A contractual provision, including an arbitration provision, "is unenforceable if it is both procedurally and substantively unconscionable." *Kilgore*, 718 F.3d at 1058. "The more substantively oppressive the contract term, the less evidence of procedural unconscionability is required to come to the conclusion that the term is unenforceable, and vice versa." *Id.* (quoting *Armendariz v. Found. Health Psychcare Servs., Inc.*, 24 Cal. 4th 83, 114 (2000)).  The party opposing arbitration bears the burden of proving unconscionability.  *See Poublon v. C.H. Robinson Co.*, 846 F.3d 1251, 1260 (9th Cir. 2017).  The procedural aspect of the unconscionability analysis focuses on "oppression or surprise due to unequal bargaining power." *Poublon*, 846 F.3d at 1260 (quoting *Pinnacle Museum Tower Ass'n v. Pinnacle Mkt. Dev. (US), LLC*, 55 Cal. 4th 223, 246 (2012)).

Pompliano argues that the circumstances surrounding his execution of the Agreement were procedurally unconscionable because Snapchat pressured him into signing the Agreement on the same day he received it and because he "was given no meaningful opportunity to consult with an attorney or negotiate the terms of the agreements."  Opp'n at 16.  Moreover, Pompliano notes that he is not a lawyer, holds no professional licenses or advanced degrees, and has no experience negotiating an employment contract.  *Id.*  Simply put, Pompliano did not understand that the Agreement waived his right to have a court decide issues of arbitrability or the implications of delegating that decision to an arbitrator.  *Id.*

"California law treats contracts of adhesion, or at least terms over which a party of lesser bargaining power had no opportunity to negotiate, as procedurally unconscionable to at least some degree." *Bridge Fund Capital Corp. v. Fastbucks Franchise Corp.*, 622 F.3d 996, 1004 (9th Cir. 2010) (citation omitted).  The *Armendariz* court noted that where an employee must sign an arbitration contract pre-employment, "the economic pressure exerted by employers on all *but the most sought-after employees* may be particularly acute, for the arbitration agreement stands between the employee and necessary

employment, and few employees are in a position to refuse a job because of an arbitration requirement." *Id.* (emphasis added).

Although Pompliano is neither a lawyer nor holds special professional training, he is not an unsophisticated party who was subject to a "take it or leave it" employment agreement.  To the contrary, he was heavily recruited by Snapchat, which had to make an aggressive pitch to convince Pompliano to leave his existing employment and join its team.  *See* Pompliano Compl. ¶¶ 6-10.  Indeed, the same day Snapchat extended its offer, Pompliano successfully negotiated with Snapchat to increase his salary by $15,000.  *Id.* ¶ 13.  As a matter of law, he cannot claim lack of knowledge of contract terms to which he agreed.  *See Madden v. Kaiser Found. Hospitals*, 17 Cal. 3d 699, 710 (1976) ("one who assents to a contract is bound by its provisions and cannot complain of unfamiliarity with the language of the instrument").  Under the circumstances of this case, any oppression or surprise is minimal and procedural unconscionability is present only to a limited degree due to the speed with which the Agreement had to be signed after the terms were finalized.

Pompliano also argues that the Agreement is substantively unconscionable because it requires him to delegate the issue of arbitrability to the arbitrator while allowing Snapchat to bring claims against him in a court.  Opp'n at 18.  "Substantive unconscionability focuses on the one-sidedness or overly harsh effect of the contract term or clause." *Kilgore*, 718 F.3d at 1058 (quoting *Harper v. Ultimo*, 113 Cal. App. 4th 1402, 1407 (2003)).  "The central idea is that the unconscionability doctrine is concerned not with a simple old-fashioned bad bargain but with terms that are unreasonably favorable to the more powerful party." *Poublon*, 846 F.3d at 1261 (quotation marks and citation omitted).

Here, the Agreement does not allow a court to determine Snapchat's claims against Pompliano.  Indeed, the arbitration clause of the Agreement covers "disputes the Company may have with the Employee."  Compl., Ex. C.  And as discussed above, the Assignment Agreement's venue provision only covers narrow circumstances, such as

when either party seeks a preliminary injunction.  *Id.*  Because the delegation clause of the Agreement is not unilateral and burdens both sides equally, it is not substantively unconscionable.  *Cf. Armedariz*, 24 Cal. 4th at 121 (finding a unilateral contract to be unconscionable).

The Court therefore concludes that the Agreement clearly and unmistakably requires the arbitrator to determine issues of arbitrability and the "gateway" clause is not unconscionable.

**C.  The Agreement as a Whole Is Not Unconscionable**

Next, Pompliano contends that the Agreement as a whole is unconscionable. Pompliano relies on the same points in his argument regarding the delegation clause to argue that the entire Agreement is procedurally and substantively unconscionable.  Opp'n at 20.  For the same reasons expressed in the section concluding that the "gateway" clause is not unconscionable, the Court also concludes that Pompliano has not borne his burden of demonstrating that the Agreement as a whole is unconscionable.

**D.  Pompliano's Claim for Violation of California Labor Code § 1050 Is Subject to Arbitration**

Pompliano's next argument is that, even if the Agreement is enforceable, it does not apply to his Labor Code § 1050 claim because he seeks a preliminary injunction under that claim.  Opp'n at 21 (citing Compl. ¶ Prayer, a.).  Certainly, the Agreement allows Pompliano to seek a preliminary injunction in court.  *See* Compl., Ex. C.  The Agreement does not allow Pompliano, however, to avoid arbitration of the entire claim merely because he is seeking equitable interim relief.  Thus, Pompliano may obtain preliminary injunctive relief from this Court on his Labor Code § 1050 claim if that is appropriate under Federal Rule of Civil Procedure 65.  But he will still have to arbitrate this claim on the merits to receive permanent equitable relief.

**E.  Pompliano's Whistleblower Claims Are Subject to Arbitration**

Pompliano's next argument is that his first cause of action for violation of the Dodd-Frank whistleblower statute, 15 U.S.C. § 78u-6, and second cause of action for

violation of California's whistleblower statute are not subject to the Agreement's arbitration clause.  The Sarbanes-Oxley Act ("SOX") provides that "[n]o predispute arbitration agreement shall be valid or enforceable, if the agreement requires arbitration of a dispute arising under this section."  18 U.S.C. § 1514A(e)(2).  Pompliano argues that because his Dodd-Frank claim arises under SOX, any predispute arbitration agreement, including the one at issue in this case, is unenforceable.  *See* Opp'n at 22.

In support of his argument that SOX's predispute arbitration ban applies to his Dodd-Frank claim, Pompliano heavily relies on *Wiggins v. ING U.S., Inc.*, No. 3:14-CV-1089, 2015 WL 3771646, at *7 (D. Conn. June 17, 2015).  In that case, the District of Connecticut observed that "a cause of action not only 'arises under' the provision literally explicitly stating that a private right of action exists . . . but also under any law that 'provides a necessary element of the plaintiff's claim for relief.'"  *Id.* at *6 (quoting *Jones v. R.R. Donnelley & Sons Co.*, 541 U.S. 369, 376 (2004)).  The court in *Wiggins* also stated that "we must look beyond the bare text of the applicable provision to the context in which it was enacted and the purposes it was designed to accomplish."  *Wiggins*, 2015 WL 3771646, at *6 (quoting *R.R. Donnelley*, 541 U.S. at 377) (brackets omitted).  The court then concluded that although 15 U.S.C. § 78u-6(h)(1)(B)(i) and 15 U.S.C. § 78u-6(h)(1)(A)(iii) enabled the plaintiff's Dodd-Frank claim, the claim also arose under 18 U.S.C. § 1514A(e)(2).  *Id.* at *7.  Accordingly, the court concluded that SOX's predispute arbitration ban applied to plaintiff's Dodd-Frank claim.  *Id.*

Notwithstanding the result in *Wiggins*, every other court to have considered the issue has concluded that SOX's predispute arbitration ban does not apply to a Dodd-Frank claim.  *See Khazin v. TD Ameritrade Holding Corp.*, 773 F.3d 488, 492-93 (3d Cir. 2014); *see also Wussow v. Bruker Corp.*, 2017 WL 2805016, 16-cv-444-wmc, at *4-7 (W.D. Wis. June 28, 2017); *Citigroup Glob. Mkts. Inc. v. Preis*, No. 14 CIV. 08487 LGS, 2015 WL 1782135, at *4 (S.D.N.Y. Apr. 14, 2015); *Murray v. UBS Sec., LLC*, No. 12 Civ. 5914(KPF), 2014 WL 285093, at *10-11 (S.D.N.Y. Jan. 27, 2014); *Ruhe v. Masimo Corp.*, No. SACV 11-00734-CJC, 2011 WL 4442790, at *4 (C.D. Cal. Sep. 16, 2011).

The Court agrees with the weight of authority that has concluded that SOX's anti-arbitration provision does not apply to claims arising out of Dodd-Frank. As an initial matter, SOX and Dodd-Frank do not "arise under" the same provisions. They are "not in the same title of the United States Code, let alone the same section." *Khazin*, 773 F.3d at 492. Moreover, the FAA reflects a "liberal federal policy favoring arbitration." *Concepcion*, 563 U.S. at 339 (quoting *Moses H. Cone Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983)). Without a clear Congressional command to the contrary, the Court will not extend the reach of an anti-arbitration rule when it is ambiguous whether it applies. Snapchat convincingly notes that SOX and Dodd-Frank are different in various respects, including exhaustion requirements, statutes of limitation, and ability to receive back pay. Reply at 19. If the Court treats SOX and Dodd-Frank as one and the same, "it would allow a plaintiff to back-door a SOX claim as a [Dodd-Frank] claim and thus avoid the administrative exhaustion requirement and shortened limitations period." *Id.* Congress' seemingly inconsistent treatment of the whistleblower provisions of SOX and Dodd-Frank also has been the subject of criticism. *Wussow*, 2017 WL 2805016, at *7 (citing academic commentary criticizing the different treatment between SOX and Dodd-Frank). This criticism cautions against applying the anti-arbitration rule to Dodd-Frank claims. *Id.* For the reasons discussed, the Court concludes that SOX's arbitration ban does not apply to Dodd-Frank claims.

Pompliano also argues that his Labor Code § 1102.5 claim is not subject to arbitration because the cases Snapchat cites to show California whistleblower claims routinely are subject to arbitration are distinguishable. Opp'n at 24. Specifically, Pompliano argues that the cases Snapchat relies on discuss arbitration clauses that were found *not* to be unconscionable. *Id.* (citing *Elmore v. CVS Pharmacy, Inc.*, No. CV 16-05603-ODW(ASx), 2016 WL 6635625 (C.D. Cal. Nov. 9, 2016); *Jacovides v. Future Foam, Inc.*, No. CV 16-01842-CAS(AJWx), 2016 U.S. Dist. LEXIS 57530 (C.D. Cal. Apr. 25, 2016); *Totten v. Kellogg Brown & Root, LLC*, No. CV 15-01876-ODW(KKx), 2016 U.S. Dist. LEXIS 18558 (C.D. Cal. Feb. 10, 2016)). As discussed above, the

-12-

arbitration agreement in this case is not unconscionable. Pompliano does not identify any case in which an agreement to arbitrate a Labor Code § 1102.5 claim was held to be unenforceable. Thus, the Court concludes that Pompliano's Labor Code § 1102.5 claim is not exempt from arbitration under the Agreement.

## VI.

## CONCLUSION

The Court **GRANTS** Snapchat's Motion to Compel Arbitration and **STAYS** all proceedings pending the completion of arbitration.

As discussed above, this Order does not prevent either side from seeking preliminary relief from this Court. Any motion for preliminary injunction must be filed within 30 days of this Order. If no such motion is filed within that timeframe or the parties disclaim any intent to pursue a preliminary injunction motion, the Court will administratively close the case, subject to the right of any party to request that the case be reopened. Within 15 days after the resolution of the parties' dispute through binding arbitration or other disposition, the parties shall file a joint status report as to whether the stay should be lifted or the action dismissed.

**IT IS SO ORDERED.**

DATED: April 11, 2018

_____
DOLLY M. GEE
UNITED STATES DISTRICT JUDGE